IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:08-cv-00575-EWN-MEH

JAMIE SCOTT,

      Plaintiff,

v.

DEVRY INC. and ROSS UNIVERSITY SCHOOL OF MEDICINE,
SCHOOL OF VETERINARY MEDICINE LIMITED,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Pursuant to Rules 8, 9, and 12(b) of the Federal Rules of Civil Procedure, Defendants DeVry Inc. ("DeVry") and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited ("Ross"), through undersigned counsel, hereby move the Court to dismiss Plaintiff Jaime Scott's First Amended Complaint.  In support of this motion, the Defendants state as follows.

### Background[1]

DeVry is incorporated in Delaware and has its principal place of business in Illinois.  See First Amended Complaint ("Compl.") ¶ 2; Declaration of Gregory Davis, attached hereto as Exhibit A ("Ex. A") at ¶ 2.  Ross is incorporated under the laws of the Federation of St.

---

[1] For purposes of this motion, Defendants assume, as required by law at this procedural stage, the truth of the factual allegations asserted in the First Amended Complaint.  See, e.g., Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008).  In doing so, Defendants do not waive and expressly reserve the right to challenge later, if necessary, the truth or accuracy of any allegation made in the First Amended Complaint.

Christopher and Nevis[2] with its principal place of business in St. Kitts, West Indies.  See Compl. ¶ 4; Notice of Removal ¶ 6 (Mar. 20, 2008).

Plaintiff Jamie Scott ("Scott") alleges that she applied and was accepted at Ross in the spring of 2006.  Compl. ¶ 19.  In the spring of 2006, she also attended an informational seminar in Fort Collins, Colorado, and asked a Ross representative if procedures called "terminal surgeries" were performed at Ross.[3]  Scott contends that she was told at the seminar that although terminal surgeries are part of the Ross curriculum, the surgeries would be optional. Compl. ¶¶ 21-24.  Immediately upon her arrival on the Ross campus in 2006, however, Scott learned that students are required to perform terminal surgeries as part of their surgical coursework.  Id. ¶ 29.

On February 14, 2008, Scott filed a Complaint against DeVry University, Inc. and Ross in Boulder County District Court, claiming misrepresentation, breach of contract, violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution, and outrageous conduct causing severe emotional distress.  On March 20, 2008, Ross and DeVry University, Inc. removed this case to this Court.

On May 23, 2008, Scott amended her Complaint by naming DeVry Inc. as a defendant in place of DeVry University Inc. and adding a claim for promissory estoppel.[4]  DeVry was served

---

[2] The Federation of St. Christopher and Nevis is sometimes referred to as the Federation of St. Kitts and Nevis.
[3] Terminal surgeries are procedures performed on animals by students during surgical courses.  Although not every veterinary school includes these procedures in the curriculum, many do.  See Association of Veterinarians for Animal Rights, Comparison Chart of Alternatives Offered at Veterinary Schools in North America, available at http://www.avar.org/alternativeschart.xls (last visited June 5, 2008) (the majority of veterinary schools listed include terminal surgeries in the curriculum at some level).
[4] Scott's original Complaint named DeVry University Inc. and Ross as defendants.  The response to that Complaint was due on May 27, 2008.  On Friday, May 23, 2008, Plaintiff amended her complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15.  The First Amended Complaint dropped DeVry University Inc. as a defendant

2

on June 2, 2008.  DeVry and Ross (collectively "Defendants") now move to dismiss the First Amended Complaint.

## Argument

### I.   This Court Lacks Personal Jurisdiction over Defendant DeVry Inc.

The First Amended Complaint must be dismissed as to DeVry pursuant to Federal Rule of Civil Procedure 12(b)(2).   In the entire Complaint, there are only two bald allegations purporting to link DeVry to the underlying actions:  Scott claims that Ross "is a subsidiary of" DeVry, see Compl. ¶¶ 5, 46, and Scott claims that because Ross is a subsidiary, Ross is automatically DeVry's agent.  Id. ¶¶ 46, 48.  These conclusory allegations are insufficient to allege that Ross is an agent of DeVry and that personal jurisdiction extends to DeVry.

DeVry has no connection with the Plaintiff or the factual allegations in her First Amended Complaint.  The only apparent basis stated in the First Amended Complaint for the allegation that Ross and, more specifically, Lisa Miller are agents of DeVry is the assertion that Ross is DeVry's "subsidiary."  See Compl. ¶ 46.  However, the mere existence of a corporate relationship between the two entities is not sufficient to support an exercise of personal jurisdiction over DeVry.  The Supreme Court has made it clear that each defendant's contacts with the forum must be assessed individually, and jurisdiction over one company cannot be established merely by its corporate relationship with another company.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  Just because a court has personal jurisdiction over a subsidiary does not mean that it has personal jurisdiction over the parent or holding

and added DeVry Inc.  Accordingly, DeVry and Ross now jointly file this Motion to Dismiss the First Amended Complaint.

3

company.  See id. ("[i]t does not of course follow from the fact that jurisdiction may be asserted over [the subsidiary] that jurisdiction may also be asserted over" the parent or holding company; the parent company itself must have its own minimum contacts giving rise to personal jurisdiction over it); see also Rush v. Savchuk, 444 U.S. 320, 331-32 (1980) (it is "plainly unconstitutional" to assert jurisdiction over one defendant based on the activities of another defendant; the requirements for personal jurisdiction must be met as to each defendant).

Nothing else is alleged in the First Amended Complaint that, if taken as true, would establish that Ross is the "agent" of DeVry.  Simply mouthing the word "agent" is not sufficient. Cf. id. ¶ 46.  There is nothing in the First Amended Complaint to show that DeVry consented to have Lisa Miller act on its behalf or that DeVry exercised control over Ross' activities in Colorado.  See Kuenzle v. HTM Sport-Und Freizeitgerte AG, 102 F.3d 453, 459 (10th Cir. 1996) ("An agency relationship is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (internal quotation and citations omitted); Pro Axess, Inc. v. Orlux Distrib., 428 F.3d 1270, 1278 (10th Cir. 2005) (a subsidiary was found to be an agent only because its activities in the forum state amounted to doing the business of the parent, the parent had exerted "considerable control" over the subsidiary's actions giving rise to the litigation, and there was a nexus between the parent company's actions and the plaintiff's injury); see also Far W. Capital v. Towne, 46 F.3d 1071, 1076 (10th Cir. 1995) (mere use of an agent in the forum state is insufficient to establish personal jurisdiction; the court must assess the extent of the

agent's role and whether use of the agent created sufficient contacts with the forum for the principal).

Ross is managed by its own administration, including deans and course directors, and has an independent board which meets regularly.  See Ex. A ¶ 6.  DeVry does not control or dictate Ross' admissions process.  See id.; cf. Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1263-64 (10th Cir. 1989) (even where the parent exercises some degree of supervision or control and the two entities have some common officers, a wholly-owned subsidiary is not an instrumentality of the parent corporation unless the parent dominates the day-to-day business decisions and disregards the corporate entity of the subsidiary).  The First Amended Complaint fails to allege facts sufficient to show that Ross is an agent of DeVry or that DeVry is a proper party to this case.  There simply is no nexus between the facts alleged and DeVry.

Scott bears the burden of establishing personal jurisdiction for each of the Defendants. See Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d 1063, 1069 (10th Cir. 2008).  She alleges that this Court has both specific and general personal jurisdiction over DeVry, but she fails to allege facts sufficient to support such an exercise of personal jurisdiction.

The test for personal jurisdiction requires analysis of the Colorado Long Arm Statute and whether the exercise of jurisdiction comports with the due process requirements of the Constitution.  Wenz v. Memery Crystal, 55 F.3d 1503, 1506-07 (10th Cir. 1995).  This Court can exercise specific personal jurisdiction over DeVry only if Scott establishes that DeVry had minimum contacts with Colorado and that her cause of action arose from that contact.  See

<u>Burger King Corp. v. Rudzewicz,</u> 471 U.S. 462, 472 (1985) (defendant must have "purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities") (internal quotations and citations omitted); <u>see also</u> C.R.S. § 13-1-124 (Colorado Long Arm Statute applies to "any cause of action arising from" one of the enumerated contacts with Colorado).

However, Scott does not allege that her cause of action arises from anything done by DeVry, much less anything done by DeVry in Colorado. Since Ross was not an agent of DeVry, Ross's alleged contacts with Colorado cannot serve as the basis for personal jurisdiction over DeVry. <u>See</u> <u>Kuenzle,</u> 102 F.3d at 459 n.9; <u>see also</u> <u>Helicopteros Nacionales de Colombia, S. A. v. Hall,</u> 466 U.S. 408, 417 (1984) (the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Scott does not allege that this action arises from DeVry's purposeful direction of its activities at a resident of Colorado through the transaction of business or commission of a tortious act. <u>See</u> C.R.S. § 13-1-124 (listing the specific types of contact with Colorado which may give rise to personal jurisdiction); <u>see also</u> <u>Burger King Corp.,</u> 471 U.S. at 472. Thus, it would be unconstitutional to exercise specific personal jurisdiction over DeVry in this case.

This Court also lacks general jurisdiction over DeVry. Because general jurisdiction is not related to the alleged conduct giving rise to the cause of action, "courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts" with the forum state. <u>Benton v. Cameco Corp.,</u> 375 F.3d

6

1070, 1080 (10th Cir. 2004). This is "a high threshold," <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1543 (10th Cir. 1996), and the defendant's "activities within the jurisdiction must render it foreseeable that the party should reasonably anticipate being haled into the forum court." <u>In re Application to Enforce v. Knowles</u>, 87 F.3d 413, 417 (10th Cir. 1996). General jurisdiction, like specific jurisdiction, is proper only if the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>Trierweiler</u>, 90 F.3d at 1533 (internal quotation and citation omitted).

The First Amended Complaint does not allege facts sufficient to establish that DeVry's general business contacts with Colorado are so substantial that DeVry should reasonably anticipate being haled into court there for any conceivable matter. Scott has alleged only that DeVry operates schools in Colorado and is generally authorized to do business in Colorado, see Compl. ¶¶ 2, 15, neither of which is correct. DeVry University, a separate legal entity, owns and operates schools in Colorado. <u>See</u> Ex. A ¶ 6. DeVry Inc. has no offices in Colorado, is not authorized to do business in Colorado, and does not have a registered agent in Colorado. <u>See id</u>. ¶ 3. Scott alleges nothing else to show that DeVry's contacts with the state are so substantial, systematic, and continuous that DeVry should anticipate being sued in Colorado for actions wholly unrelated to any alleged conduct DeVry has directed at a resident of the state.

DeVry is headquartered in Illinois. It owns subsidiaries which have schools across North America, located in twenty-six states and Canada. <u>See id.</u> ¶¶ 4, 5. In addition, courses are offered in many other locations spread across forty-four states and the District of Columbia, as

well as in twenty-seven foreign countries.  See id. ¶ 5.  The schools located in Colorado are not operated by DeVry Inc. and have nothing to do with veterinary medicine or Ross.  See id. ¶ 6.

Were this Court to exercise general personal jurisdiction over DeVry as Plaintiff urges, this would mean that a DeVry employee in Illinois could file a Title VII claim in Colorado, a DeVry supplier of linens could file a contract claim here in Colorado, or an invitee on the property of any DeVry subsidiary in any state could file suit in Colorado, and so on and so forth. None of these scenarios is foreseeable on the basis that a subsidiary of DeVry operates schools in Colorado.  The assertion of general jurisdiction over DeVry means that it must be able to anticipate being haled into court in this forum for *anything*.  Yet DeVry is not headquartered here, is not authorized to do business in this state, and its subsidiaries' operations are far-flung. There is no reasonable or foreseeable basis to expect that DeVry could be sued in this forum for any reason and any claim.  This stretches the Long Arm Statute and the concept of general jurisdiction too far and violates the due process protections afforded to DeVry by the Constitution.  In short, DeVry's contacts with Colorado are not systematic and continuous, and asserting general jurisdiction over DeVry would be unconstitutional.

Further, Scott's conclusory statement in paragraph 13 of the First Amended Complaint that suit in Colorado is not unduly burdensome for DeVry is wholly insufficient to support personal jurisdiction.  See Dudnikov, 514 F.3d at 1070 (court assesses personal jurisdiction based on the "well-pled (that is, plausible, non-conclusory, and non-speculative . . .)" facts in a complaint).  Scott admits that DeVry's principal place of business is in Illinois, Compl. ¶ 2, and since she fails to allege any facts to show that DeVry has a substantial and pervasive presence in

Colorado, Scott gives the Court no basis for reaching any conclusion other than it would be burdensome *per se* for DeVry to have to defend a suit in Colorado that does not arise from any DeVry contact with Colorado. As a result, the claims in the First Amended Complaint against DeVry should be dismissed for lack of personal jurisdiction.

## II.     The Complaint Fails to State a Claim Upon Which Relief Can be Granted.

At the Rule 12(b)(6) motion to dismiss stage, the court should test the sufficiency of the allegations made in the First Amended Complaint. See Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). Scott bears the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest'" that she is entitled to relief. See Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). The factual allegations "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Id. To satisfy her burden to state a claim upon which relief can be granted, Scott must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.

As all five of the counts in Scott's First Amended Complaint fail to sufficiently allege a claim, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as to both DeVry and Ross. Moreover, Scott has failed to sufficiently plead Count I under Rule 9(b) and Counts II, III, and V under Rule 8.

   A.     Count I, Misrepresentation, Fails to Satisfy Rule 9(b) and Fails to State a Claim.

In Count I, Scott purports to allege a claim for "Misrepresentation." If this count is intended to be one for fraudulent misrepresentation, then the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. See Fed. R. Civ. P. 9(b); Schwartz v. Celestial Seasonings, 124 F.3d 1246, 1250 (10th Cir. 1997) (applying the Rule 9(b) standard to a claim of fraudulent misrepresentation).[5] Because claims of fraud must be pled with particularity, the Defendants should not be left trying to guess whether a general misrepresentation claim is actually a claim for fraudulent misrepresentation. See Fed. R. Civ. P. 9(b); see also Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir. 1992) ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based . . . Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing . . . . We recognize and rigorously enforce these salutary purposes of Rule 9(b).") (citation omitted). If Count I is indeed a claim for fraudulent misrepresentation, it fails because Scott basically recites in bare-bones fashion the elements of the cause of action. This is insufficient to satisfy the heightened pleading standard for fraud

---

[5] Colorado law recognizes two types of misrepresentation: fraudulent and negligent. Negligent misrepresentation "provides a remedy when money is lost due to misrepresentation in a business transaction." Mehaffy, Rider, Windholz & Wilson v. Central Bank, N.A., 892 P.2d 230, 236 (Colo. 1995). Colorado has accepted the Restatement (Second) of Torts formulation of negligent misrepresentation, under which a plaintiff must prove that: (1) the defendant, in the course of his business profession or employment or in any other transaction in which he has a pecuniary interest; (2) supplied false information for the guidance of others in the transaction; (3) upon which the plaintiff justifiably relied, causing pecuniary loss; and (4) defendant failed to exercise reasonable care or competence in obtaining or communicating the information. See id. (quoting Restat. 2d of Torts, § 552). In all private transactions, the defendant must have supplied the information for the plaintiff's benefit and guidance, and liability is limited to loss suffered in the transaction (or a substantially similar transaction) for which the defendant intended that the information influence the plaintiff. See id. Further, the defendant must be "in the business of supplying information of the type relied on," Colorado National Bank v. Adventura Associates, L.P., 757 F. Supp. 1167, 1171 (D. Colo. 1991), and the transaction in which the plaintiff was harmed must have been with a party "other than the defendant." Id. at 1173. Those elements are inapplicable here and have not been alleged in the First Amended Complaint. Accordingly, this motion addresses the only possible misrepresentation claim that could apply, i.e., fraudulent or intentional misrepresentation.

claims.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  See also Twombly, 127 S. Ct. at 1965 (even under the lesser Rule 8 pleading standard, a plaintiff must do more than give "a formulaic recitation of the elements of a cause of action").

The elements of fraudulent misrepresentation are:  (1) the defendant's knowing misrepresentation of a material fact; (2) plaintiff's reliance on that material misrepresentation; (3) a right or justification for the reliance; and (4) resulting damages.  Williams v. Boyle, 72 P.3d 392 (Colo. App. 2003).  It is not enough for a plaintiff to allege reliance upon the alleged misrepresentation; the reliance also must be reasonable.  See Fasing v. LaFond, 944 P.2d 608, 612 (Colo. Ct. App. 1997) (reasonable reliance is an element of fraudulent misrepresentation). Here, Scott admits that she discovered, at the latest, "immediately upon her arrival at Ross . . . that students were required to perform terminal surgeries . . . ."  Compl. ¶ 29.  Scott further admits that she "immediately attempted to resolve the issue of required terminal surgeries with Dr. Guy St. Jean, head of surgery."  Id. ¶ 32.  Dr. St. Jean told Scott "that she should drop out of the program because if she refused to participate in the terminal surgeries, she would fail."  Id. ¶ 33.  Scott is still a student at Ross.  Id. ¶ 27.

Notwithstanding these fatal admissions, Scott's entire misrepresentation claim rests upon the allegedly false information that Lisa Miller provided to Scott at the informational seminar in Ft. Collins in the spring of 2006.  Id. ¶¶ 42-50.  Scott's discovery of the terminal surgery requirement happened "immediately upon her arrival at Ross."  Id. ¶ 29.  At that point in time, upon learning that terminal surgeries were required, Scott no longer had any reasonable basis for

relying upon any purportedly false information Ms. Miller provided to her at an earlier seminar. Scott admits that the head of surgery at Ross told her "immediately" that she would flunk out if she did not participate in terminal surgeries.  Id. ¶ 33.  Given these admissions by Scott, she had actual knowledge of Ross' requirements immediately upon her arrival and could not, as a matter of law, continue to "detrimentally rely on the information she was given at the informational seminar in Ft. Collins."  See id. ¶ 49; cf. Greene v. Thomas, 662 P.2d 491, 495 (Colo. Ct. App. 1982) (where factors other than reliance upon a misrepresentation caused the plaintiff to act in a manner that led to his alleged harm, the plaintiff cannot establish that he was damaged by his reliance).  Because Scott's own allegations show that the element of detrimental and reasonable reliance cannot be established as a matter of law, Count I fails to state a claim upon which relief can be granted and should be dismissed with prejudice accordingly.

Furthermore, any claim by Scott for fraud, even if it had been pleaded in compliance with Rule 9, is barred by Scott's ratification and/or waiver of the supposed fraud.  Apparently, the theory of Count I is that an agent (admissions representative Lisa Miller) of one of the defendants (Ross) falsely stated to Scott that terminal surgeries were optional at Ross when, in fact, they were required, and that, in reliance upon that misrepresentation, Scott enrolled at Ross and has remained there.  However, as discussed above, Scott discovered the purported misrepresentation "[i]mmediately upon her arrival at Ross University," Compl. ¶ 29, and was "immediately" told by the head of surgery in no uncertain terms that "if she refused to participate in the terminal surgeries, she would fail."  Id. ¶¶ 32, 33.  Nowhere in the First Amended Complaint does Scott allege that terminal surgeries are not in fact required at Ross or that Scott

has been relieved of that requirement.  Scott thus has remained at Ross with full knowledge attained "immediately upon her arrival" that whatever she alleges she was told at the informational seminar was false.  Scott's own allegations therefore establish ratification and/or waiver.  See Elk River Assocs. v. Huskin, 691 P.2d 1148, 1153 (Colo. Ct. App. 1984) (ratification and waiver bars a claim where it "appear[s] that the defrauded party, with full knowledge of the truth respecting the false representations, elected to continue to carry out the agreement"); Ponder v. Altura Farms Co., 143 P. 570, 573 (Colo. 1914) (plaintiff cannot bring a claim for fraud after he freely "does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation"); see also Gronewoller v. DM Capital, Inc. (In re Mascio), No. 06-cv-01780-PSF, 2007 U.S. Dist. LEXIS 86690, at *16 (D. Colo. Nov. 13, 2007) (applying the holding of Elk River Assocs.)[6].

Where, as here, the facts alleged in the First Amended Complaint reveal a fatal flaw in the plaintiff's claims – whether that defect is in the cause of action itself or arises by virtue of an affirmative defense that bars the claim – dismissing the case under Rule 12(b)(6) is proper.  Jones v. Bock, 549 U.S. 199 (2007) (a "complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face") (alteration in original; internal quotation marks omitted).  Here, Scott's own allegations establish that, even if there were a fraud (and there was none) she had actual knowledge of it and proceeded to ratify it.  She has remained enrolled at Ross with full knowledge of the fact that terminal surgeries are not "optional" but are required and that, by her own allegations, if she does not participate in them, she will fail.

---

[6] Pursuant to Local Rule 7.1D, a copy of this opinion is attached hereto as Exhibit B.

Accordingly, Count I of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

      B.      <u>Count II, Breach of Contract, Fails to Satisfy Rule 8 and Fails to State a Claim.</u>

Count II of the First Amended Complaint fails to satisfy Rule 8(a)'s standard for stating a claim for relief. The only assertion of an alleged contract states, "Ms. Scott, upon signing her acceptance of admission to Ross believed she had a contract for an education free of terminal surgeries." Compl. ¶ 52. Although this allegation references an "acceptance of admission," Scott offers no information about the content or terms of that document.

In addition, Scott makes no factual allegations as to the terms of any contract between herself and Ross other than to reference her subjective belief that her education would not include terminal surgeries. The First Amended Complaint is inadequate, as the Defendants cannot tell what the contract and its terms supposedly were. <u>See</u> Fed. R. Civ. P. 8(a)(2); <u>see</u> <u>also</u> <u>Barfield v. Commerce Bank, N.A.</u>, 484 F.3d 1276, 1281 (10th Cir. 2007) (a "mere allegation that . . . a defendant made an undescribed contract with the plaintiff and breached it . . . is not sufficient to meet the notice pleading requirements") (internal quotation and citation omitted); <u>Houston v. Mile High Adventist Acad.</u>, 846 F. Supp. 1449, 1453 (D. Colo. 1994) ("Houston I") (it is insufficient under Rule 8 to assert a breach of contract claim when "the word 'contract' appears nowhere in the general allegations" and there is no way to tell whether the contract was written or implied or what its terms were).

It is unclear from the First Amended Complaint what Scott is alleging to be the contract, whether it was express or implied, or what its terms may be. In any event, Count II of the First

Amended Complaint fails to state a claim and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Paragraph 52 of the First Amended Complaint is insufficient to state a claim based on an implied contract to provide an education without terminal surgeries.  The elements of implied contracts are the same as the elements of an express contract.  Kirk v. United States, 451 F.2d 690, 695 (10th Cir. 1971).  The difference is that an implied contract exists where "the acts of the parties and other circumstances" show an intent to contract.  See id.  A key ingredient to any contract is a meeting of the minds.  See id.

Here, Scott has not alleged an objective meeting of the minds; she alleges only that her subjective belief was that she had a contract with Ross under which she did not have to do terminal surgeries.  This is insufficient to demonstrate the existence of a "no terminal surgeries" contract and to sustain a claim for breach of contract.  See Zaccardi v. Zale Corp., 856 F.2d 1473, 1478 (10th Cir. 1988) (a meeting of the minds is necessary to form an implied contract, and that requisite intent to contract "is first to be determined by the objective manifestation of the parties"); Richmond v. Oneok, Inc., 120 F.3d 205, 210 (10th Cir. 1997) (an "implied contract claim must be reasonable under an objective standard, not merely the subjective belief" of one party) (internal quotation and citation omitted); Galieti v. State Farm Mut. Auto. Ins. Co., No. 92-B-2467, 1994 U.S. Dist. LEXIS 11858, at *7 (D. Colo. May 4, 1994) (subjective expectations do not rise to the level of an implied contract)[7].  Indeed, the First Amended Complaint itself alleges facts that affirmatively show that there was no "meeting of the minds" at all.  Scott

---

[7] Pursuant to Local Rule 7.1D, a copy of this opinion is attached hereto as Exhibit C.

admits that, once she arrived at Ross, she was told that that terminal surgeries were not optional. Compl. ¶ 33.  Nothing in the First Amended Complaint alleges that Ross' position on this issue ever changed.  Thus, the First Amended Complaint itself shows that the threshold element for stating a breach of contract claim cannot be satisfied.  Count II of the First Amended Complaint therefore fails.[8]

For the same reasons, paragraph 52 of the First Amended Complaint is insufficient to state a claim based on the theory of an implied term or agreed-upon interpretation of an express contract.  Scott fails to provide any information about the terms of her contract with Ross and merely alleges only her own belief as to existence of a "no terminal surgeries" term.  Scott's subjective belief regarding what the parties intended their contract to say, even if true, would not be not enough as a matter of law to establish her claim, particularly in the face of her own allegations that Ross did not agree with her subjective beliefs.  See Orback v. Hewlett-Packard Co., 909 F. Supp. 804, 808-09 (D. Colo. 1995) (the plaintiff's "subjective understanding" of how a policy was to be enforced was not relevant and did not create a contract with such a term).  Moreover, courts must be cautious "when an implication of a condition or term would result in a breach."  Smith v. Long, 578 P.2d 232, 235 (Colo. Ct. App. 1978); see also Bator v. Mines Dev., Inc., 513 P.2d 220, 225 (Colo. Ct. App. 1973) (the court's duty is "to ascertain the intent of the

---

[8] Furthermore, any agreement that, by its terms, is not to be performed within one year must be in writing or else it is void.  See C.R.S. § 38-10-112.  As a contract for an education free from terminal surgeries could not, by its own terms, be performed within a year, such an agreement would have to be in writing.  The First Amended Complaint does not allege that any such written agreement exists.

parties from the terms of the contract," and "courts should be hesitant to imply any conditions or terms into a contract which result in a breach").

As with Count I, Count II of Scott's First Amended Complaint also fails because of her ratification and/or waiver of the alleged breach.  Scott concedes that she learned of the alleged breach immediately upon arrival at Ross in 2006, yet she continued performing and accepting benefits under the supposedly breached contract.  Thus, Scott has ratified the breach and acted so as to relinquish her right to enforce or bring suit under the "terminal surgery" implied contract or term.  See Elk River Assocs., 691 P.2d at 1153 (ratification and waiver occur where the plaintiff, despite knowing the truth, "continue[s] to carry out the agreement"); see also Ponder, 143 P. at 573; Gronewoller, 2007 U.S. Dist. LEXIS 86690, at *16.  Consequently, Count II of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

    C.    Count III, Promissory Estoppel, Fails to Satisfy Rule 8 and State a Claim.

Under Colorado law, the elements of a promissory estoppel claim are: (1) one party made a promise to the other; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his detriment; and (4) the promise must be enforced to prevent injustice.  Berg v. State Bd. of Agric., 919 P.2d 254, 259 (Colo. 1996).  This is a "modest extension" of the law of contracts. See id.  There can be no claim for promissory estoppel where there is a contract between the parties.  See Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C., 176 P.3d 737, 741 (Colo. 2007).

Count III of the First Amended Complaint fails to satisfy Rule 8 and should be dismissed. Scott states the elements of promissory estoppel, see Compl. ¶¶ 55-58, but does not provide sufficient information to sustain her claim. She alleges that "Defendant" should have foreseen that Scott would rely on the alleged promise of Lisa Miller, that Scott relied on "the defendant's promise," and that "Defendant is estopped from denying that it is liable for costs incurred by Ms. Scott." See id. ¶¶ 56, 58, 59. She does not make clear which of the Defendants she means. This goes beyond inartful pleading and leaves the Defendants unsure as to whether Count III applies to Ross or DeVry.

Count III should also be dismissed for failure to state a claim. Although Scott did not properly allege the content and terms of her contract with Ross, she alleged that she did, in fact, have one. See Compl. ¶ 53. This negates her claim for promissory estoppel. See Wheat Ridge Urban Renewal Auth., 176 P.3d at 741. Scott could not reasonably rely upon extraneous promises in the face of any contract with Ross that included Ross' curriculum (a curriculum which Scott admits requires terminal surgeries for all students.)

Further, Scott's own allegations reveal that her reliance upon any promise made by Lisa Miller was not reasonable. As previously discussed, Scott learned "immediately upon her arrival at Ross" that terminal surgeries would be required. Id. ¶ 29. The head of surgery told her "immediately" that she would fail if she did not participate in terminal surgeries. Id. ¶ 33. Thus, if Scott paid tuition and costs because of any prior promise that terminal surgeries would not be required, she did so unreasonably.

      D.      <u>Count IV, Violation of the Free Exercise of Religion, is Frivolous and Fails to State a Claim.</u>

It is axiomatic that only government action may be challenged on Free Exercise Clause grounds.  <u>See, e.g.</u>, U.S. Const. Amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."); <u>Wallace v. Jaffree</u>, 472 U.S. 38, 49 (1985) ("As is plain from its text, the First Amendment was adopted to curtail the power of Congress to interfere with the individual's freedom to believe, to worship, and to express himself in accordance with the dictates of his own conscience."); <u>Sch. Dist. of Abington Twp. v. Schempp</u>, 374 U.S. 203, 225 n.9 (1963) (the Free Exercise Clause is used to challenge state action).

Here, there is no allegation of any state action, nor could there be.  The government is not involved at all.  The only defendants named in the First Amended Complaint are private entities. <u>See</u> Compl. ¶¶ 2, 4.  No allegations are made that either defendant is an instrumentality of any government.  Count IV of the First Amended Complaint is frivolous and should be dismissed with prejudice.

      E.      <u>Count V, Outrageous Conduct Causing Severe Emotional Distress, Fails to Satisfy Rule 8 and Fails to State a Claim.</u>

Like Counts I, II, and III, Count V of the First Amended Complaint fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure.  Count V of the First Amended Complaint merely refers back to all previous paragraphs and then makes the assertion, "Defendants engaged in extreme and outrageous conduct by posting Ms. Scott's article in AVAR next to the administration office at Ross, forwarding the article via e-mail to the student body,

and other outrageous conduct as well." Compl. ¶¶ 64-65. The broad, catch-all allegation that there was "other outrageous conduct" does not demonstrate how the general allegations establish the elements necessary for a claim of outrageous conduct, nor does the First Amended Complaint identify what "other" conduct or actions by the Defendants are supposedly extreme and outrageous. Such pleading cannot satisfy the requirements of Rule 8(a)(2). See Houston v. Mile High Adventist Acad., 872 F. Supp. 829, 835 (D. Colo. 1994) (dismissing a claim for outrageous conduct which incorporated by reference all preceding allegations and then alleged that "the conduct set forth above" was outrageous, because this fails to "establish the essential elements of a claim for outrageous conduct" and does not "detail specific acts" entitling the plaintiff to relief).

In Count V, Scott has done nothing more than recite the elements of the tort of outrageous conduct. This does not pass Rule 12(b)(6) muster. See Twombly, 127 S. Ct. at 1965 (to state a claim upon which relief can be granted, a complaint must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Scott offers no factual allegations to demonstrate how the supposedly outrageous conduct of DeVry and Ross was intended to cause her any emotional distress, nor does she offer more than a conclusory allegation to establish that she suffered any distress at all, much less that the distress rose to the required level of severity. See Compl. ¶¶ 66-67.

Further, none of the facts alleged in the First Amended Complaint, including the allegation that Ross posted and distributed Scott's article, rises to the level of "extreme and outrageous conduct" as a matter of law. A defendant may be liable for outrageous conduct

causing severe emotional distress only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be recognized as atrocious, and utterly intolerable in a civilized community."   Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970).  This is an "extremely high" standard.  Coors Brewing Co. v. Floyd, 978 P.2d 663, 665 (Colo. 1999).  "Mere insults, indignities, threats, annoyances [and] petty oppressions" are not enough.  Pearson v. Kancilia, 70 P.3d 594, 597 (Colo. Ct. App. 2003).

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint.  Shepherd v. U.S. Olympic Comm., 464 F. Supp. 2d 1072, 1089 (D. Colo. 2006); accord Coors Brewing Co., 978 P.2d at 664-65 (same applies to a motion to dismiss for failure to state a claim in state court).  Therefore, if the conduct the plaintiff alleges does not rise to the "extremely high" level required for a claim of outrageous conduct, no reasonable person could find that the conduct is outrageous and extreme and the claim should be dismissed as a matter of law.  See id. at 665; see also Swanson v. Bixler, 750 F.2d 810, 814-815 (10th Cir. 1984) (a bank accused of mismanaging an elderly man's money prevented his stepson from removing the money from the bank; the stepson's outrageous conduct claim was dismissed for failure to state a claim because the alleged conduct was not outrageous and extreme as a matter of law).

Scott claims that she experienced emotional distress because Ross posted and distributed an article Scott had previously published in the newsletter of the Association of Veterinarians for Animal Rights.  Compl. ¶¶ 38, 65.  Even if true, no reasonable person could find that this action rises to the level of extreme, atrocious, and outrageous conduct that goes beyond all bounds of decency.  There is no allegation that Ross altered Scott's words or made any negative statements

about her; Scott alleges only that Ross posted, and hence re-published, an article that Scott herself had already published in a newsletter that was available to anyone in the world with access to the Internet.  See id.[9]  It is hardly outrageous and extreme to post an article that has already been voluntarily published by the author.  Cf. Showler v. Harper's Magazine Found., 222 Fed. Appx. 755, 760-61 (10th Cir. 2007) (when applying the same standard for outrageous conduct adopted by Colorado, publication of a photograph of a deceased soldier taken at his funeral was not outrageous, because it merely depicted what the family had already allowed others, those in attendance, to see)[10].

Even if Count V is read to include allegations that Ross's other supposed conduct – the alleged misrepresentation made to Scott at the informational seminar and the alleged breach of contract once she later arrived at school –  Scott still has failed to state a claim upon which relief can be granted.  Colorado courts have clearly held that a breach of contract is not outrageous conduct.  See Churchey v. Adolph Coors Co., 759 P.2d 1336, 1350 (Colo. 1988) (plaintiff's allegations that her employer acted outrageously when it fired her for missing work due to illness, in contravention of personnel policies, "confuses breach of contract with outrageous conduct").  "While the average member of the community may not approve of someone who breaches a contract, such conduct is not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,'" and thus no reasonable person could find that a breach of contract is outrageous conduct.  Id. (internal

---

[9] The Association of Veterinarians for Animal Rights makes its newsletters publicly available on the internet.  See http://www.avar.org/publications_newsletter.asp (last visited May 16, 2008).
[10] Pursuant to Local Rule 7.1D, a copy of this opinion is attached hereto as Exhibit D.

quotation omitted).  The same is true of misrepresentation.  See First Nat's Bank in Lamar v. Collins, 616 P.2d 154, 156 (Colo. Ct. App. 1980) (affirming the dismissal of an outrageous conduct claim that was premised upon "substantially the same" factual allegations as a misrepresentation claim).  In short, not all conduct which is inconsiderate, objectionable, or subject to other causes of action rises to the high level of being outrageous and extreme.  See Churchey, 759 P.2d at 1350-51.

Conduct much more extreme than that complained of by Scott has been held to be insufficient, as a matter of law, to sustain a claim for outrageous conduct.  For example, an employee who was terminated after complaining that his supervisor had ordered him to engage in illegal practices failed to state a claim for outrageous conduct causing severe emotional distress, because the alleged conduct of his employer was not sufficiently extreme.  See Cronk v. Intermountain Rural Elec. Ass'n., 765 P.2d 619, 621 (Colo. Ct. App. 1988).  A former employee who was terminated as a scapegoat for an extensive criminal conspiracy within the company failed to state a claim for outrageous conduct, because "no reasonable person could find" that the alleged conduct rose "to the high level of outrageousness" required.  See Coors Brewing Co., 978 P.2d at 666.

The allegations in Scott's First Amended Complaint simply do not, as a matter of law, present circumstances that qualify as "atrocious, and utterly intolerable in a civilized community."  Scott does not allege that she is being forced to do something that is illegal but merely that she would prefer not to do that part of the curriculum requiring terminal surgeries. However, a dispute between a veterinary student and veterinary school about curriculum does

not, as a matter of law, satisfy the elevated standard required by the tort of outrageous conduct. Cf. Pearson v. Kancilia, 70 P.3d 594, 598 (Colo. Ct. App. 2003) (outrageous conduct found where the plaintiff's employer engaged in the extreme, never-acceptable behavior of pressuring her into having intercourse by telling her that she would lose her job if she did not comply).

Finally, it is important to note that claims for educational malpractice are not recognized by Colorado law. See Houston I, 846 F. Supp. at 1456. Claims which "raise questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students" are not cognizable. Id. This includes claims for outrageous conduct that are based on the concept of educational malpractice. Id. Thus, to the extent that Count V is read to incorporate any allegations regarding the reasonableness of Ross's services to a student, it does not state a claim upon which relief can be granted and must be dismissed as a matter of law.

As none of the conduct alleged by Scott can possibly satisfy the extremely high standard required for a claim for outrageous conduct, Count V of the First Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## Conclusion

For the foregoing reasons, Defendants DeVry and Ross respectfully request that the First Amended Complaint be dismissed in its entirety.

Respectfully submitted this 9th day of June, 2008.

s/ David D. Powell, Jr.
David D. Powell, Jr.
Leah P. VanLandschoot
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
dpowell@bhfs.com
lvanlandschoot@bhfs.com
303-223-1100


Lisa Zeiler Joiner
Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
ljoiner@fulbright.com
202-662-4598

*ATTORNEYS FOR DEFENDANTS*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 9th day of June, 2008, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

jennifer@thomaidislaw.com
*ATTORNEY FOR PLAINTIFF*

BROWNSTEIN HYATT FARBER SCHRECK, LLP

*s/ David D. Powell, Jr.*
David D. Powell, Jr.
Leah P. VanLandschoot
410 17th Street, Suite 2200
Denver, Colorado 80202
dpowell@bhfs.com
lvanlandschoot@bhfs.com
303-223-1100