# Exhibit B

LEXSEE 2007 US DIST LEXIS 86690

In re: DAVID A. MASCIO, d/b/a DM Capital, Inc.; MASCIO ASSET MANAGEMENT, INC.; MASCIO ASSET MANAGEMENT, LLC; and MONICA L. MASCIO, Debtors. PAUL GRONEWOLLER; and GRONEWOLLER & ASSOCIATES, INC., Plaintiffs/Appellees, v. DM CAPITAL, INC., f/k/a Mascio Asset Management, Inc.; DAVID MASCIO; and MAM CAPITAL, LLC,, Defendants/Appellants.

Civil Action No. 06-cv-01780-PSF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

2007 U.S. Dist. LEXIS 86690

November 13, 2007, Decided
November 13, 2007, Filed

**COUNSEL:** [*1] For Paul Gronewoller (Appellee), Gronewoller & Associates, Inc. (Appellee), Plaintiffs: Darwin (D.J.) K. Poyfair, LEAD ATTORNEY, Paul S. Swedlund, Shughart, Thomson & Kilroy, P.C.-Denver, Denver, CO.

For DM Capital, Inc., formerly known as Mascio Asset Management, Inc., David A. Mascio (Appellant), Mam Capital, Inc., Defendants: Donald Bruce Coles, LEAD ATTORNEY, Quinn and Coles, P.C., Denver, CO.

**JUDGES:** Phillip S. Figa, United States District Judge.

**OPINION BY:** Phillip S. Figa

**OPINION**

**ORDER ON NOTICE OF APPEAL**

THIS MATTER is before the Court on debtor David Mascio's Notice of Appeal (Dkt. # 1), filed on September 8, 2006. Mascio appeals a judgment and orders entered by the United States Bankruptcy Court for the District of Colorado after trial in an adversary proceeding in Mascio's Chapter 7 bankruptcy case. After full briefing by all parties the case was assigned by random draw to the undersigned judge on January 3, 2007. The Court has determined that oral argument of the appeal will not materially assist the Court in its ruling. This Court has jurisdiction to review the final order of the Bankruptcy Court pursuant to *28 U.S.C. § 158(a)(1)*.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case concerns a claim by [*2] Plaintiffs Paul Gronewoller ("Gronewoller") and Gronewoller & Associates, Inc. ("Associates") (collectively "plaintiffs") objecting to the dischargeability of an investment debt under several subsections of *11 U.S.C. § 523(a)*. [1] The following facts are not disputed and are taken from the Bankruptcy Court's June 9, 2006 Order, which was issued after a trial to the court was held on November 16-18 and 22, 2005.

> 1   Unless otherwise specified, all future statutory references are to Title 11 of the United States Code.

Mascio owned and operated a business called Mascio Asset Management, Inc. ("MAM"), which provided financial and investment advisory services. Gronewoller and Mascio met in January 2000 and decided to form MAM Capital, LLC ("Capital"), which would be the successor company to MAM and would provide similar services. To capitalize the new company, MAM and Associates, which was formed by and under the control of Gronewoller, entered into an Asset Purchase and Contribution Agreement (the "Agreement") on October 1, 2000, [2] pursuant to which (1) Associates would purchase

a 49% interest in certain MAM assets (the "Assets") for $ 164,640, and (2) the Assets would be contributed and assigned [*3] to Capital.

> 2   As noted by the Bankruptcy Court, the Agreement is dated October 1, 2001; however, the parties' testimony demonstrates that this is a typo.

Associates, through Gronewoller, transferred $ 164,640 to MAM in January 2001, and the Assets were assigned to Capital. MAM then changed its name to DM Capital, Inc. Prior to the transfer, Associates loaned $ 34,300 to Capital pursuant to a promissory note dated October 1, 2000.

Plaintiffs asserted in the underlying proceeding that, over the course of the next ten months, Mascio used Gronewoller's investment to generate an increased client base with the intent of transferring the clients to a new business venture that did not include Gronewoller. Disputes over the business arose between Gronewoller and Mascio in the fall of 2001, and Gronewoller asserted that Mascio locked him out of the business premises after he refused Mascio's offer to buy him out for less than fair market value. Capital ceased operations in December 2001, and plaintiffs filed a lawsuit against Mascio and MAM in state court on December 13, 2001, alleging breach of contract, fraudulent inducement, breach of fiduciary duty, breach of the duties of care and loyalty, [*4] conversion, tortious interference, unjust enrichment, and violations of securities laws. In addition to damages, plaintiffs requested injunctive relief and appointment of a receiver.

Shortly before the case went to trial Mascio filed for bankruptcy relief, and plaintiffs then commenced this adversary proceeding to deny discharge of debts to them under *11 U.S.C. § 523(a)*, asserting they were fraudulently induced to enter into the Agreement. After the Bankruptcy Court dismissed several of plaintiffs' claims and plaintiffs abandoned another, the only claims remaining for trial were those for fraudulent oral representations and omissions under *§ 523(a)(2)(A)* and fraudulent written documents under *§ 523(a)(2)(B)*.

## II. THE BANKRUPTCY COURT'S ORDERS

Several rulings in the Bankruptcy Court's June 9, 2006 Order issued after trial (the "First Order") have not been appealed and are not at issue. These unchallenged rulings include: (1) the Bankruptcy Court's dismissal of all claims against the business entity defendants, Capital and MAM; (2) the Bankruptcy Court's dismissal of all claims brought by Associates against Mascio; and (3) the Bankruptcy Court's holding that Gronewoller was not entitled [*5] to judgment on his claims against Mascio under *§ 523(a)(2)(B)*. Plaintiffs have not cross-appealed the Bankruptcy Court's Order to the extent it was favorable to Mascio; thus, the above rulings will not be disturbed.

The Bankruptcy Court found in favor of Gronewoller on his claim of non-dischargeability of Mascio's debt to him under *§ 523(a)(2)(A)*. [3] Specifically, the Bankruptcy Court held that, prior to the parties' execution of the Agreement: (1) Mascio misrepresented to Gronewoller that MAM was registered with the SEC, both by making an affirmative misrepresentation of that fact and by failing to disclose to Gronewoller a February 11, 2000 letter from the SEC directing MAM to deregister because its assets were less than $ 25 million; (2) Mascio intended to deceive Gronewoller by making the misrepresentation and failing to disclose the letter; (3) Gronewoller relied on the misrepresentation and omission; (4) Gronewoller's reliance was justifiable; and (5) Gronewoller was damaged by the misrepresentation. The Bankruptcy Court awarded actual damages in the amount of Gronewoller's initial investment ($ 164,640) and the unpaid balance of the promissory note ($ 29,381.28), plus prejudgment [*6] and postjudgment interest. The Bankruptcy Court entered judgment in accordance with its Order on June 30, 2006.

> 3   Neither party disputes the Bankruptcy Court's holding that Gronewoller individually was the proper plaintiff in the adversary proceeding.

After the Bankruptcy Court issued the First Order, Mascio filed a Motion to Amend Findings and Judgment, which the Bankruptcy Court denied in an Order dated August 8, 2006 (the "Second Order"). As is relevant to this appeal, the Bankruptcy Court held that the fact that Gronewoller learned in December 2000 of the SEC's letter advising MAM to deregister, which occurred after he entered into the Agreement but before he transferred the funds to MAM, did not negate Gronewoller's reliance on Mascio's misrepresentations. Because Gronewoller was already contractually obligated to transfer the funds by the terms of the Agreement, the Bankruptcy Court held, Gronewoller's later-acquired knowledge that MAM was not registered with the SEC was "not relevant to the

reliance determination." [*7] Second Order at 7. The Bankruptcy Court also rejected Mascio's argument that Gronewoller suffered no damages because Capital had increased in value by September 2001.

### III. MASCIO'S APPEAL

Mascio raises three issues on appeal. First, he argues the Bankruptcy Court erred in failing to determine the existence of a debt under state law before considering whether it was nondischargeable under *§ 523(a)(2)(A)*. Second, he claims Gronewoller waived any state law claim of fraud in the inducement by his conduct after obtaining full knowledge of Mascio's misrepresentation. Finally, Mascio argues Gronewoller failed to prove any damages under state law resulting from Mascio's alleged fraud. The remainder of the Bankruptcy Court's analysis of nondischargeability under *§ 523(a)(2)(A)* is unchallenged and thus will not be addressed on appeal.

### IV. ANALYSIS

#### A. Standard of Review

A district court reviews a bankruptcy court's conclusions of law *de novo* and reviews the bankruptcy court's findings of fact under a clearly erroneous standard. *In re White, 25 F.3d 931, 933 (10th Cir. 1994).*

#### B. Existence of a Debt under State Law

*Section 523(a) of the Bankruptcy Code* provides that a discharge in bankruptcy shall not [*8] discharge an individual debtor from certain kinds of obligations, stating in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual from any debt --
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

*11 U.S.C. § 523(a)(2)(A).* To establish that a debt is subject to this exception from discharge, the plaintiff must prove: (1) the debtor made a false representation; (2) with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor. *In re Denbleyker, 251 B.R. 891, 895 (Bankr. D. Colo. 2000)* (citing *Field v. Mans, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995)).*

Mascio contends that, before reaching the issue of whether a debt is nondischargeable under *§ 523(a)(2)(A)*, a court must first determine under state law, in this case under Colorado law, whether the creditor has proved the existence of a debt in [*9] the first place. Def.'s Br. at 8-9. The Court agrees. In *Grogan v. Garner,* in the context of distinguishing between "the standard of proof that a creditor must satisfy in order to establish a valid claim against a bankrupt estate and the standard that a creditor who has established a valid claim must still satisfy in order to avoid dischargeability," the Supreme Court held that, while "[t]he validity of a creditor's claim is determined by rules of state law, . . . the issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code." *498 U.S. 279, 283-84, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)* (citation omitted).

In *Cohen v. De La Cruz,* the Supreme Court described the existence of a debt as a "threshold condition" to whether *§ 523(a)* applies and described a "debt" under the statute as follows: "A 'debt' is defined in the Code as 'liability on a claim,' a 'claim' is defined in turn as a 'right to payment,' and a 'right to payment,' we have said, 'is nothing more nor less than an enforceable obligation.'" *523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998)* (citations omitted). Moreover, in the Third Circuit's opinion in *Cohen* that was affirmed by the Supreme Court, the court of appeals recognized that the [*10] bankruptcy court had determined that the debtor had violated the New Jersey Consumer Fraud Act, and noted that such liability under state law for damages caused by fraud "clearly represents a debt within the meaning of the bankruptcy code." *In re Cohen, 106 F.3d*

*52, 56 (3d Cir. 1997), aff'd, Cohen v. De La Cruz, supra.*

Gronewoller contends in his response that "fraud determinations under *11 U.S.C. § 523(a)*... are made according to federal law." Pl.'s Resp. at 8-9 (citing *Kudla v. Kartchner, 105 B.R. 985, 989 (D. Colo. 1989)*, and *Rodi v. Bombardier Capital, Inc., 163 B.R. 1017, 1020-21 (N.D. Ill. 1994)* ("As courts have repeatedly held, non-dischargeability due to fraud is a federal question, therefore a federal rather than a state definition of fraud is to be used.") (quotation omitted)). While this is an accurate statement of the law, however, it does not affect the requirement that the existence of a valid claim first be determined in accordance with state law before it is determined whether, under federal law, the debt is nondischargeable due to fraud under *§ 523(a)*. *Grogan, 498 U.S. at 283-84*.

In this case, there is no state court judgment against Mascio, as he declared bankruptcy **[*11]** before Gronewoller's lawsuit against him went to trial. Moreover, the mere existence of the Agreement and the fact that Gronewoller transferred money to MAM under the Agreement do not automatically result in the existence of an "enforceable obligation" against Mascio. *Cohen, 523 U.S. at 218*. Thus, the Bankruptcy Court did not expressly make the threshold determination of the existence of a "debt" under state law, *i.e.*, whether Gronewoller had a valid claim against Mascio under Colorado law. [4] However, as discussed below, in analyzing whether the alleged debt was obtained by fraud under *§ 523(a)*, the Bankruptcy Court implicitly determined that Mascio was liable to Gronewoller for false representation under state law.

    4 There is no dispute that Colorado law applies.

Under Colorado law, the elements of false representation are: (1) the defendant made a false representation of a past or present fact; (2) the fact was material; (3) the defendant made the representation knowing it to be false or was aware that he did not know whether it was true or false; (4) the defendant made the representation with the intent that the plaintiff would rely on it; (5) the plaintiff relied on the representation; **[*12]** (6) the plaintiff's reliance was justified; and (7) this reliance caused damages to the plaintiff. Colorado Supreme Court Committee on Civil Jury Instructions, CJI-Civ. 19:1 (4th ed.); *Forsyth v. Associated Grocers of Colo., Inc., 724 P.2d 1360, 1363 (Colo. App. 1986)*. In comparison, as set forth in § IV(B), *supra*, to establish that a claim is subject to a *§ 523(a)(2)(A)* exception from discharge, the plaintiff must prove: (1) the debtor made a false representation; (2) with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor. *In re Denbleyker, 251 B.R. at 895*.

Although the Bankruptcy Court did not explicitly consider each of the state law elements of false representation in its analysis, those elements are almost identical to the *§ 523(a)* requirements that were analyzed in detail by the Bankruptcy Court. *See Grogan, 498 U.S. at 285* (noting that the elements of state law fraud "are the same as those of the fraud discharge exception"). Moreover, to the extent the state law fraud claim contains additional elements, the Bankruptcy Court made **[*13]** sufficient findings to support a ruling that those elements were satisfied. For example, although materiality of the misrepresented fact is not a separate requirement under *§ 523(a)*, the Bankruptcy Court held that MAM's SEC registration was "critical to the deal" because it would allow Capital to attract institutional clients. First Order at 10-11. This equates to a finding that Mascio's misrepresentation regarding MAM's SEC registration was "material" to Gronewoller's decision to invest and become a partner. *See CJI-Civ. 19:4* (defining a fact as "material if a reasonable person under the circumstances would regard it as important in deciding what to do" or if the person stating it knows that "the person receiving the information would regard it as important in deciding what to do"); *Wade v. Olinger Life Ins. Co., 192 Colo. 401, 560 P.2d 446, 452 n.7 (Colo. 1977)* (approving jury instruction defining "material fact"). Similarly, although knowledge of the falsity of the representation by the defendant is not a separate requirement under *§ 523(a)*, the Bankruptcy Court expressly found that "Mascio intended to deceive Gronewoller through *knowing* misrepresentation of critical facts." First **[*14]** Order at 9 (emphasis added).

In sum, the Bankruptcy Court's findings are equivalent to a ruling that Mascio is liable to Gronewoller under Colorado law for false representation. Such liability qualifies as a "debt" that could fall within one of the discharge exceptions contained in *§ 523(a)*. *See In re Cohen, 106 F.3d at 56* (liability for damages caused by fraud under state law is a "debt" within the meaning of the bankruptcy code). Other than the finding regarding Gronewoller's damages, Mascio does not object on

Case No. 1:08-cv-00575-PAB-MEH   Document 19-2   filed 06/09/08   USDC Colorado   pg 6 of 8

Page 5
2007 U.S. Dist. LEXIS 86690, *14

appeal to the Bankruptcy Court's analysis under § 523(a), and the Court finds no basis to disturb these findings. Accordingly, Gronewoller has established the existence of a "debt" under § 523(a) unless Mascio is correct that, under state law, Gronewoller either waived his fraud claim or failed to prove the existence of damages stemming from Mascio's fraud.

### C. Waiver of Fraud Claim

Mascio argues the Bankruptcy Court erred in failing to find that Gronewoller waived his fraud claim because he learned of the alleged misrepresentation regarding MAM's registration with the SEC in December 2000, yet proceeded to have Associates pay its obligation under the Agreement the following month, [*15] while enjoying the benefits of the corresponding contribution to Capital by MAM as well as installments on the promissory note. Pl.'s Resp. at 11. In the Second Order, the Bankruptcy Court addressed this claim in the context of evaluating whether the knowledge Gronewoller gained in December 2000 amounted to a waiver of "any argument that he relied upon Mascio's false misrepresentation regarding SEC registration." Second Order at 7-8. Citing federal law on nondischargeability under § 523(a), the Bankruptcy Court held that, because Gronewoller was "contractually obligated to transfer the investment funds by the terms" of the Agreement, the fact that Gronewoller "may have later learned that MAM was not SEC registered is not relevant to the reliance determination." Id. (citing In re Chivers, 275 B.R. 606, 623 n.8 (Bankr. D. Utah 2002)).

It does not appear that the Bankruptcy Court considered applicable state law in evaluating Mascio's waiver argument. Waiver, if proven, is an affirmative defense to Gronewoller's state law fraud claim. See Elk River Assocs. v. Huskin, 691 P.2d 1148, 1153 (Colo. App. 1984). Accordingly, if Gronewoller waived his fraud claim under state law, there is no threshold [*16] "debt" and no need to determine whether his claim is nondischargeable under § 523(a).

"To sustain the defense of ratification and waiver, it must appear that the defrauded party, with full knowledge of the truth respecting the false representations, elected to continue to carry out the agreement. This determination involves questions of fact, particularly the fact of intent." Huskin, 691 P.2d at 1153 (citations omitted). In this Court, the parties cite conflicting evidence presented at trial as to the effect of Gronewoller's discovery of the SEC letter in December 2000 and whether Gronewoller consequently elected to continue to carry out the Agreement with full knowledge of the truth respecting the false representations. See Trial Exs. 27, 29, & 30, attached to Pl.'s Resp.; see also Tr. Trans. 11/18/05, at 51. Because the Bankruptcy Court does not appear to have applied Colorado law on waiver, and because the issue of whether Gronewoller waived his fraud claim involves questions of fact, the Court remands the case to the Bankruptcy Court to determine whether Mascio proved the affirmative defense of waiver under Colorado law.

### D. Proof of Fraud Damages

Finally, Mascio contends that the [*17] Bankruptcy Court erred in finding that Gronewoller proved damages resulting from Mascio's fraud and that, because damages are an essential element of a claim of fraudulent inducement, Gronewoller has failed to establish the existence of a "debt" under Colorado law . Def.'s Br. at 12-14. The Colorado Supreme Court provides as follows with regard to determining damages for fraudulent inducement:

> A plaintiff who has been fraudulently induced to enter a contract may either rescind the contract or affirm the contract and recover in tort for the damages caused by the fraudulent act. The plaintiff has the burden of proof and must establish by a preponderance of the evidence that he has in fact suffered damage and that the evidence introduced provides a reasonable basis for a computation of damages. Where the subject of a fraud is a conveyance of property, a plaintiff electing to affirm the contract is entitled to receive the benefit of the bargain, i.e., the difference between the value of the property as represented and the actual value of the property as received. An essential element of such an award is actual damage. This damage cannot be based on mere speculation or conjecture, but once [*18] the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery.

Case No. 1:08-cv-00575-PAB-MEH   Document 19-2   filed 06/09/08   USDC Colorado   pg 7 of 8

Page 6
2007 U.S. Dist. LEXIS 86690, *18

*W. Cities Broadcasting, Inc. v. Schueller, 849 P.2d 44, 48 (Colo. 1993)* (citations and quotations omitted).

There is no evidence in the record that Gronewoller ever sought rescission of the Agreement or a rescission measure of damages in this case, notwithstanding Gronewoller's argument to this Court that he in fact elected restitution rather than expectation damages. Pl.'s Resp. at 18-19. Indeed, in Gronewoller's response to Mascio's post-trial Motion to Amend Findings and Judgment in the Bankruptcy Court on the issue of proof of damages, Gronewoller argued that his damage theory "represent[ed] Gronewoller's expectation damages had Mascio's representations regarding the business been true rather than false .... [A]n expectation damage theory is not inconsistent with a claim of fraud in the inducement. . . ." Pl.'s Resp. to Mot. to Amend at 5. Thus, by his actions Gronewoller elected to affirm the Agreement and sued to recover the benefit of the bargain, which is the difference between the value of the property as represented and the actual value [*19] of the property as received.[5]

> 5   Gronewoller contends Mascio waived any argument that Gronewoller did not rescind the Agreement by failing to raise it in the Bankruptcy Court. Pl.'s Resp. at 18 n.4. However, Mascio had no reason to make that argument in the Bankruptcy Court, as Gronewoller never alleged that he was entitled to restitution, and both parties were proceeding on a theory of expectation damages. Thus, Mascio's arguments in the post-trial briefing in the Bankruptcy Court understandably focused on whether such damages had been proved.

It appears that the Bankruptcy Court did not award damages based on a benefit-of-the-bargain analysis, but rather applied a restitution measure of damages in determining that Gronewoller had been damaged in the amount of $ 164,640, the amount of his initial investment in MAM. See *Trimble v. City & County of Denver, 697 P.2d 716, 723 (Colo. 1985)* (defrauded plaintiff who elects to rescind must restore the conditions existing before the agreement was made). The Bankruptcy Court did not find, under an expectation theory of damages, that the $ 164,640 represented the difference between the value of the 49% interest in MAM as represented by Mascio [*20] and the actual value of the investment. Accordingly, the award of $ 164,640 on this claim must be vacated and the case remanded for further proceedings as to the damages, if any, to be awarded based on Mascio's liability for fraudulently inducing Gronewoller to enter into the Agreement.

With regard to the promissory note, however, Gronewoller has proved his damages as a matter of law. In cases of fraudulent inducement in procuring a loan, "the proper measure of damages is the total amount of money loaned, plus interest." *Black v. First Fed. Savings & Loan Ass'n, 830 P.2d 1103, 1114 (Colo. App. 1992), aff'd on other grounds sub. nom., La Plata Med. Ctr. Assocs. v. United Bank, 857 P.2d 410 (Colo. 1993)*. The Bankruptcy Court held that there was an unpaid balance of $ 29,381.28 due on the promissory note, which Mascio does not dispute. First Order at 17. The Bankruptcy Court also calculated prejudgment interest on the note in the amount of $ 8,217.68, and postjudgment interest at $ 5.18 per day calculated from the date of judgment, which was June 30, 2006. See Order on Interest Calculation at 1-2. Gronewoller is entitled to recover this amount, which constitutes a "debt arising from fraud." [*21] *Cohen, 523 U.S. at 218*. Accordingly, to the extent Gronewoller has not waived his fraud claim, the Bankruptcy Court's Order is affirmed with respect to the damages awarded based on the promissory note.

### V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

> 1. The Orders of the Bankruptcy Court dated June 9, 2006 and August 8, 2006 are AFFIRMED IN PART and REVERSED IN PART;
>
> 2. The Judgment of the Bankruptcy Court dated June 30, 2006 is AFFIRMED IN PART and REVERSED IN PART; and
>
> 3. This matter is REMANDED to the Bankruptcy Court to expressly evaluate Mascio's waiver defense under Colorado law and to determine the proper measure of damages, if any, on Gronewoller's claim of nondischargeability of Mascio's debt under *11 U.S.C. § 523(a)(2)(A)*.

DATED: November 13, 2007.

2007 U.S. Dist. LEXIS 86690, *21

| | |
|---|---|
| BY THE COURT: | Phillip S. Figa |
| *s/ Phillip S. Figa* | United States District Judge |