## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:08-cv-575-EWN-MEH

JAMIE SCOTT,

      Plaintiff,

v.

DEVRY INC. and ROSS UNIVERSITY SCHOOL OF MEDICINE,
SCHOOL OF VETERINARY MEDICINE LIMITED

      Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFEDANTS' MOTION TO DISMISS

---

Plaintiff, Jamie Scott, through undersigned counsel, hereby responds to Defendants, DeVry Inc. ("DeVry") and Ross University School of Medicine, School of Veterinary Medicine Limited ("Ross") (and collectively "Defendants") Motion to Dismiss. In support of this response, the Plaintiff states as follows.

### BACKGROUND

Plaintiff, Jamie Scott is a resident of Black Hawk, Colorado. See Plaintiff's First Amended Complaint ("Compl.") ¶ 1. Plaintiff Scott is currently a student at Ross.  She applied and was accepted in spring 2006. Compl. ¶ 19. Plaintiff Scott always had dreams of becoming a veterinarian and helping animals. She has forever held strong moral, ethical and religious views about how animals should be treated. When deciding which veterinary teaching institution she would attend, she sought to find a school that practiced humane teaching methods, namely a school where terminal surgeries were not required. See Plaintiff Jamie Scott's Affidavit, ("Plaintiff Affidavit"), attached hereto as Exhibit A ("Ex. A") at ¶ 3. Plaintiff knew that

reasonable alternatives to terminal surgery programs were available and that many schools provided alternatives.[1] Before matriculating to Ross, Plaintiff Scott attended an informational seminar in spring of 2006 in Fort Collins, Colorado held by Defendants. Plaintiff Scott specifically asked Lisa Miller, Defendants' recruiter, whether there were terminal surgeries at Ross. Lisa Miller explicitly told Plaintiff Scott that the terminal surgeries were performed, but were optional. Compl. ¶ 21-24. See Ex. A ¶ 10. Plaintiff Scott relied on this information and spent all of her hard-earned savings to move to St. Kitts and attend Ross. Upon arriving at Ross in 2006, Plaintiff Scott learned, during a guided tour of the school, that Lisa Miller had lied to her and that terminal surgeries were in fact a part of the mandatory veterinary curriculum. Compl. ¶ 29. See Ex. A ¶ 16.

Plaintiff Scott immediately informed the Ross staff and administration that she had been misled into believing that there were alternatives to the terminal surgery programs. Compl. ¶ 32-37. Plaintiff Scott was told by Ross administration that they would help her in transferring to another school. Defendants never followed through on this promise. See Ex. A ¶ 24-27. Instead, the administration harassed and harmed Plaintiff by posting an interview of Plaintiff published in a newsletter of the Association of Veterinarians for Animal Rights ("AVAR") next to the Dean's office and the Dean forwarded the article via email to the student body. Compl. ¶ 38-41.

Desperate, with all savings spent, and living completely off of student loans, Plaintiff Scott was stuck at Ross. When all options had been explored without follow-through from the Defendants, Plaintiff Scott filed a Complaint in Boulder County District Court on February 14, 2008 against Ross and DeVry University, Inc. On March 20, 2008, Ross and DeVry University,

---

[1] Terminal surgeries are life ending procedures performed on living animals during surgical training. Many schools do not have these as part of the curriculum and even if they do, they are offered as an optional elective and are not a mandatory part of the curriculum. See Association of Veterinarians for Animal Rights, Comparison Chart of Alternatives Offered at Veterinary Schools in North America, *available at* http://www.avar.org/alternativeschart.xls (last visited July 7, 2008).

Inc. removed that case to this Court. On May 23, 2008, Plaintiff Scott amended her Complaint naming DeVry, Inc. as a defendant in place of DeVry University, Inc and adding a claim for promissory estoppel. On June 9, 2008, Defendants filed a Motion to Dismiss Plaintiff Scott's First Amended Complaint. Plaintiff Scott now responds to that motion.

## ARGUMENT

### I. This Court has personal jurisdiction over Defendant DeVry Inc.

Defendant DeVry acquired Ross in May of 2003 and advertises that Ross is one of DeVry's schools.[2]  Defendants make an attempt to downplay the relationship between DeVry and Ross in an effort to dismiss DeVry's responsibility toward Plaintiff. The relationship between DeVry and Ross is not as "mere" as the Defendants wish to portray. They are tied together seamlessly from their Senior Management down through their recruitment of staff.

In support of the contention that a parent corporation should not be held liable for the actions of a subsidiary, Defendants cite <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 781 n.13 (1984), stating that, "'[i]t does not of course follow from the fact that jurisdiction may be asserted over [the subsidiary] that jurisdiction may also be asserted over' the parent or holding company."  <u>See</u> Defendant's Motion to Dismiss, brackets supplied by Defendant.  The Court does not opine that this sentence is in reference to a "subsidiary" or a "parent or holding company" as Defendants' Motion to Dismiss would indicate.  However, the next phrase clarifies the scope of the Court's intent: "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary."  <u>Id</u>. at 781 n.13.  The full context of the statement provides that unrelated subsidiaries cannot be held liable for the actions of a holding or parent company.  It does not necessarily follow that a parent company cannot be held liable for

---

[2] DeVry, Inc. states that they are "one of the largest, publicly held, international, higher education companies in North America..." DeVry lists Rss as one of its schools. <u>See</u> DeVry. Inc home page, *available at* http://www.devryinc.com (last visited July 7, 2008).

the actions of one of its holdings if that parent company is significantly involved with the business of the subsidiary.

Here, Defendants DeVry and Ross are more closely intertwined and conduct more business in Colorado than their Motion to Dismiss would indicate. A court has personal jurisdiction over any defendant who maintains within the state "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The business that Ross and DeVry conduct is so interrelated that DeVry maintains minimum contacts in all states where Ross acts. In fact, despite the claim that DeVry Inc. only does business in Illinois and Delaware, DeVry Inc. permitted itself to be haled into a Michigan court in 2003. See Nielsen v. DeVry, Inc., 302 F.Supp.2d 747, (W.D.Mich.2003) (dismissed on unrelated grounds). If a Michigan court had jurisdiction over DeVry, a Colorado court with the same relation to Defendants has jurisdiction as well.

To support the contention that DeVry is shielded from responsibility for Ross's actions, Defendants cite Lowell Staats Mining Co. v. Pioneer Uravan, Inc., stating that, "a wholly-owned subsidiary is not an instrumentality of the parent corporation unless the parent dominates the day-to-day business decisions and disregards the corporate entity of the subsidiary." Lowell, 878 F.2d 1259, 1263-64 (10th Cir. 1989). However, this "day-to-day business" connection is only one factor out of 10 that the court looks at in determining whether a parent corporation is a separate entity. The Court's opinion explicitly states that, "All of the factors . . . need not be present for a court to determine a subsidiary is the alter ego of the parent corporation." Id., (citing Friedman & Son, Inc. v. Safeway Stores, 712 P.2d 1128, 1131 (Colo.App.1985)); see also DeWitt Truck Brokers v. W. Ray Flemming Fruit Co., 540 F.2d 681, 687 (4th Cir.1976). The

court names a variety of factors that must be looked at in making the ultimate determination whether to recognize a separate corporate entity, including: "(1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. . . . (8) In the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation." Lowell, 878 F.2d 1259, (citing Fish v. East, 114 F.2d 177, 191 (10th Cir.1940)); Fish has been cited with approval in Friedman v. Safeway, 712 P.2d 1128, 1131 (Colo.App.1985), and New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp., 645 P.2d 868, 869 (Colo.App.1982).

DeVry and Ross satisfy these factors.  The two have "common officers and directors"; on DeVry's very own Senior Management listings, DeVry's Executive Vice President, Thomas C. Shepherd is also the President of Ross.[3]  DeVry refers to Ross as a "department or division"; DeVry's investor information page refers to the programs that its "divisions offer."  See attached hereto as Exhibit B ("Ex. B"). Ross receives "direction pertaining to its interests" from DeVry; DeVry's statement of its purposes, mission, and values includes Ross' mission statement.  See attached hereto as Exhibit C ("Ex. C").  DeVry maintains oversight of its subsidiary universities' curriculum and academic content as demonstrated by its Academic Committee Charter.  See attached hereto as Exhibit D ("Ex. D").  Lisa Miller, is employed by Defendant DeVry and therefore is under the control of Defendant DeVry working to recruit students for its school, Ross.[4] Defendant DeVry specifically lists Lisa Miller as an individual likely to have discoverable

---

[3] See DeVry, Inc website lisitng for Senior Management and Directors where anyone can see Thomas C. Shepherd is both the Executive Vice President of DeVry and the President of Ross University See DeVry, Inc. website *available at* http://www.devryinc.com/corporateinfomration/officers_directors.jsp (last visited July 7, 2008).
[4] See Defendant DeVry Inc's Rule 26 (a)(1) Initial Disclosures.

information to support its defenses in their individual initial disclosures. <u>See</u> Defendant DeVry Inc's Rule 26 (a)(1) Initial Disclosures ("DeVry Disclosures") ¶ A 8. Defendant DeVry's own website indicates a close relationship between DeVry and Ross by advertising career opportunities with DeVry at Ross.[5]  Furthermore, DeVry indicates its own business presence within the state by advertising job openings within DeVry itself throughout Colorado.  DeVry's employment advertisements specifically state that admissions recruiters and advisors working to sell students on DeVry's graduate schools are employed by DeVry Inc., *not* by the individual schools themselves.[6]  <u>See</u> attached hereto as Exhibit E ("Ex. E").  From May of last year (2007) consistently between and as recently as March of this year (2008), all correspondence with Plaintiff's counsel was with Defendant's counsel, Charles Stewart and Robyn Martin, both with the Deputy General Counsel of DeVry, Inc., speaking and acting on behalf of both Ross and DeVry.  DeVry Inc. maintains a presence within Colorado directly related to providing job opportunities and by recruiting students to the universities which they own.  DeVry conducts business for Ross; Ross conducts business for DeVry within Colorado; and DeVry conducts its own business within Colorado.

This systematic and continuous business presence within the state gives this Court general personal jurisdiction.  These factors satisfy the Colorado Long Arm Statute's language that the state has jurisdiction resulting from "the transaction of any business within the state." See C.R.S. § 13-1-124 (listing the specific types of contact with Colorado which may give rise to personal jurisdiction).

Moreover, this Court can exert specific personal jurisdiction over Defendant DeVry

---

[5] DeVry, Inc speicifially offers "other career opportunities with DeVry" to include Ross University School of Veterinary Medicine. <u>See</u>  DeVry, Inc website for "Careers at DeVry page *available at* http://www.devryinc.com/careers/index.jsp (last visited July 7, 2008).
[6] At any one time about half a dozen DeVry, Inc. job postings are listed in Colorado, but for the sake of brevity, Plaintiff Scott has attached only two for reference.

because the entity has minimum contacts with Colorado and the harm caused to Plaintiff is a direct result of that contact. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Plaintiff Scott's injuries resulted from DeVry's purposeful direction of its activities at a resident of Colorado through the "commission of a tortious act within this state."  C.R.S. § 13-1-124. DeVry sent their agent, Lisa Miller, to Fort Collins, Colorado to recruit students for their school, Ross.

Lisa Miller's misrepresentations to Plaintiff directly resulted in Plaintiff's injuries. Lisa Miller acts as a recruiter for these Defendants. Defendants direct their recruitment activities to the people of Colorado. Whether Ross itself is an agent of DeVry is of no consequence here. The culprit and nexus of the lie that precipitated Plaintiff's injuries comes from Lisa Miller; an employee who could have very likely found her position on DeVry's "job search" on the Careers at DeVry web page.[7] In fact, outside of the case of Lisa Miller specifically, DeVry advertises job openings for admissions recruiters and advisors, employed by DeVry, working to sell students on all of DeVry's graduate schools, including Ross.  See Ex. E and a second job posting attached hereto as Exhibit F ("Ex. F").   In addition, through their offering of employment opportunities, Defendant DeVry most certainly purposely avails itself in any number of states including Colorado in accordance with any of the limitations set out by the Defendants.[8]  Even if, as outlined in Keeton v. Hustler Magazine, Inc., the two Defendants are assessed as individual entities, all evidence suggests that Defendant DeVry, Inc. is appropriately listed as a Defendant over whom jurisdiction is proper in this case.

This Court also has general jurisdiction over Defendant DeVry, because DeVry has a

---

[7] DeVry, Inc.'s website has a search engine to search for jobs in all states throughout the United States and all positions. The public can search job listings in every location that DeVry owns a school *available at* http://www.devryinc.com/careers/index.jsp (last visited July 7, 2008).
[8] ID

substantial and pervasive presence in Colorado.. The Defendants quote <u>Benton v. Cameco Corp</u>
in an attempt to deflate any idea that Defendants have "systematic and general business contacts"
<u>Benton</u>, 375 F.3d1070, 1080 (10th Cir. 2004). They contend in quoting <u>Trierweiler v. Croxton &</u>
<u>Trench Holding Corp</u>, 90 F.3d 1523 (10th Cir. 1996), that they do not meet the "very high
threshold" of the more stringent minimum contacts test. In addition they argue that the activities
of the Defendants' in this case do not comport with "activities within the jurisdiction (that)
render it foreseeable that the party should reasonably anticipate being haled into foreign court."
<u>In re Application to Enforce v. Knowles</u>, 87 F.3d 413, 417 (10th Cir. 1996).

All this is asserted with such authority, yet anyone with Internet access and even the most
basic skills in using the Internet could systematically and continuously input the location
"Colorado" into the online employment search engine for DeVry, Inc. and get a number of
listings for employment opportunities with DeVry, Inc. within the state of Colorado.[9] If that is
not enough for their "high threshold," DeVry, Inc. holds a number of recruitment activities for
any one of its entities at events including public fairs and festivals throughout Colorado. The
recruiters are able to speak about each of the schools and programs and do not act as specialists
for any one institution. With all of this activity, it is more than reasonable that Defendant DeVry
has availed itself to being brought to Court in Colorado.

Plaintiff Scott has satisfied the test for personal jurisdiction and her claims against DeVry
survive the analysis of the Colorado Long Arm Statute as well as whether the exercise of the
jurisdiction comports with the due process requirements of the Constitution. <u>Wenz v. Memery</u>
<u>Crystal</u>, 55 F.3d 1503, 1506-07 (10th Cir. 1995).  With the clear substantial, systematic and
continuous contacts within the state of Colorado by Defendant DeVry, Plaintiff Scott's assertion

---

[9] ID on July 7, 2007 there were several employment opportunities in Colorado listed as DeVry, Inc., *available at*
http://www.devryinc.com/careers/index.jsp (last visited July 7, 2008).
.

of jurisdiction over Defendant DeVry is not unconstitutional. The only thing that would be unconstitutional is to allow this corporate giant to hide behind its many translucent shells in an attempt to avoid just litigation.

## II. Plaintiff's Complaint States Five Claims Upon Which Relief Can Be Granted

When reviewing a motion to dismiss under F.R.C.P. 12(b)(6), all averments of material fact must be accepted as true, and all of the allegations in the complaint must be viewed in the light most favorable to the plaintiff. See Zinermon v. Burch, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984). The court must accept as true all of the factual allegations contained in the complaint. Kassem v. Wash. Hosp. Ctr., 513 F.3d 251, 253 (D.C.Cir.2008) (quoting Erickson, 127 S.Ct. at 2200). See also Twombly, 127 S.Ct. at 1965; Brown v. Dist. of Columbia, 514 F.3d 1279, 1281-82 (D.C.Cir.2008). The court makes all reasonable inferences in favor of plaintiff. See Zinermon, 494 U.S. at 118, 110 S.Ct. 975; see also Fed.R.Civ.P. 8(a).

Defendants have misapprehended Plaintiffs' burden under the doctrine of notice pleading. In the case at bar, the necessary elements have been detailed and supporting facts have been provided in adherence with the standards laid out in F.R.C.P. 8(a)(2). Additionally, Plaintiff Scott can and will document each of the facts in support of her claims. Consequently, it would not be appropriate to grant the Defendants' motion to dismiss.

### A.    Count I, Misrepresentation

Defendants and/or their agents fraudulently, knowingly, recklessly and/or negligently made misrepresentations and/or omissions which were material and influenced Plaintiff Scott's decision to attend Ross.

The motion to dismiss Plaintiffs' claim for fraudulent misrepresentation has no merit. A

claim for fraudulent misrepresentation includes the following elements:

1.  The defendants knowing misrepresentation of material fact;

2.  Plaintiff's reliance on that material misrepresentation;

3.  A Right or justification for the reliance; and

4.  Resulting damages.

See Williams v. Boyle, 72 P.3d 392 (Colo. App. 2003). Plaintiff Scott's compliant covers each of these four elements of a claim for fraudulent misrepresentation; therefore, the motion to dismiss should be denied.

The motion to dismiss Plaintiffs' claim for negligent misrepresentation has no merit.  A claim for negligent misrepresentation includes the following elements:

1.      The defendant gave false information to the plaintiff;

2.      The defendant gave such information to the plaintiffs in the course of the defendant's business, profession, or employment;

3.      The defendant gave such information to the plaintiffs for the guidance or use of the plaintiff in a business transaction;

4.      The defendant was negligent in obtaining or communicating the information;

5.      The defendant gave such information with the intent or knowing that the plaintiff would act or decide not to act in reliance on the information;

6.      The plaintiff relied on the information supplied by the defendant; and,

7.      The plaintiff's reliance was a cause of the plaintiff's damages.

See Robinson v. Poudre Valley Federal Credit Union, 654 P.2d 861, 864 (Colo. App. 1982); Fitzgerald v. Edelen, 623 P.2d 418, 419 (Colo. App. 1980); First National Bank v. Collins, 616

P.2d 154, 157-59 (Colo. App. 1980).  Plaintiffs' complaint covers each of the seven elements of a claim for negligent misrepresentation; therefore, the motion to dismiss should be denied.

Lisa Miler knowingly and without question, lied and misrepresented the facts about Ross's terminal surgery requirement to Plaintiff Scott while she was aggressively recruiting students for Defendants. Plaintiff Scott actively sought an institution that utilized humane teaching practices. She went to a recruitment seminar and was falsely told by Lisa Miller that Ross's terminal surgery program was optional. See Affidavit of Jamie Scott ("Plaintiff Affidavit"); Ex. A at ¶ 3-10.

Lisa Miller did not limit her misrepresentation of facts to Plaintiff Scott. Ms. Miller habitually misrepresents the facts about Ross. One instance of this behavior occurred at the AVMA convention in Hawaii. Lisa Miller misrepresented that Ross did not "require students to kill animals because they do not have that type of training anymore." See Affidavit of Teri Barnato, attached hereto as Exhibit G ("Ex. G") at ¶ 4. Lisa Miller even agreed that she or someone else representing Ross could be interviewed by AVAR to discuss Ross's training program and that it did not do harmful or fatal procedures on animals. Id. ¶ 5.

Given the Plaintiff's Amended Complaint, Plaintiff's Initial Disclosures, Plaintiff's Affidavit attached with this Response, and Plaintiff's Response to the Motion to Dismiss, it is certain that the standard has been met for misrepresentation. Thus, Plaintiff Scott's claim for misrepresentation is valid and Defendants' Motion to Dismiss this claim should be denied.

**B.     Count II, Breach of Contract**

The definition of a contract as learned by any first-year law student is the presence of an offer, an acceptance and mutual consideration. A breach of contract claim can only succeed if a plaintiff establishes (1) the existence of a contract; (2) performance under the contract by the

plaintiff or some justification for nonperformance; (3) the defendant's failure to perform under the contract; and (4) resulting damage to the plaintiff. Western Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992).

Plaintiff's Complaint, Plaintiff's Affidavit attached to this response, and Plaintiff's Response to Motion to Dismiss all allege sufficient facts to support Plaintiff Scott's breach of contract claims. Defendants and Plaintiff Scott have entered into a contractual relationship whereby Defendants promised to provide educational services to Plaintiff Scott in consideration of her payment of tuition. Part of the promise made to Plaintiff Scott was a promise to provide educational services free of overly invasive and mandatory terminal surgery programs.  Plaintiff Scott has paid tuition and has performed all requirements and has held up her end of the contract. Defendants cannot proclaim the same.

It does not matter whether Plaintiff Scott alleges an objective "meeting of the minds" as a prerequisite for the establishment of this educational contract. The Defendants attempt to play word games and create circuitous arguments in an effort to distract the Court from the core issue; Plaintiff Scott was deceived by Lisa Miller and as a result, a breach of an educational contract occurred.

Plaintiff Scott made many attempts to mitigate and minimize the damages she sustained. Ballow v. PHICO Ins. Co., 878 P.2d 672, 680 (Colo.1994) (citing Tull v. Gundersons, Inc., 709 P.2d 940, 946 (Colo.1985)); Technical Computer Servs., Inc. v. Buckley, 844 P.2d 1249, 1255 (Colo.App.1992). See Plaintiff Affidavit ¶ 16-35.

Plaintiff Scott's claim for breach of contract is valid and Defendants' Motion to Dismiss this claim should be denied.

C.      <u>**Count III, Promissory Estoppel**</u>

As correctly stated by Defendants, the elements for a promissory estoppel claim are: (1) one party made a promise to the other; (2) the promisor should reasonably have expected the promisee would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his detriment; and (4) the promise should be entered to prevent injustice.  <u>Berg v. State Board of Agriculture</u>, 919 P.2d 254, 259 (Colo. 1996).

In the present case, it has been clearly established that Lisa Miller, acting on behalf of DeVry and/or Ross, made a promise to Plaintiff Scott that the veterinary education at Ross would not require terminal surgeries.  As a recruiter for Ross, it is reasonable to assume that Miller made this "promise" to Plaintiff Scott for the sole purpose of having Scott attend Ross University.  Plaintiff Scott reasonably relied upon Miller's "promise" to her detriment by moving to St. Kitts and spending all of her life savings in the process.  Once in St. Kitts, Plaintiff Scott was trapped from a financial standpoint and had no reasonable alternative but to continue to attend Ross University while trying to develop some type of alternative program such that she would not be forced to perform any type of terminal surgeries.  Given that there are reasonable alternatives offered by most accredited veterinary schools, justice requires that Miller's "promise" to Plaintiff Scott be enforced to prevent injustice.

As evidenced by Defendant's Motion to Dismiss, they are also seeking to dismiss Plaintiff Scott's breach of contract claim by arguing there was no contract; and on the other hand arguing that one cannot plead promissory estoppel when there is a valid contract between the parties.  As this court is well aware, alternative pleading is permitted and even encouraged "where a party doubts the existence of a contract".  <u>Caplinger v. Lundgren</u>, 905 F. Supp. 876, 882 (Dist. Kansas, 1995); *citing Campbell v. Troy*, 42 Mich. App. 534, 537, 202 N.W.2d 547

(1972).

As for Defendant's allegation that Plaintiff Scott's reliance was not reasonable, this at best is a factual issue and thus inappropriate for a resolution by way of a motion to dismiss. As set forth in Plaintiff Scott's Affidavit, upon learning of the requirement for terminal surgeries, Scott diligently tried to work with Defendant's representatives in an effort to come up with some type of alternative and/or seeking a transfer to another school. However, given Defendant's lack of cooperation and Plaintiff Scott's financial means, there was no alternative other than to bring this lawsuit.

Plaintiff Scott has also established thoroughly and completely earlier in this response that her claims are against both Ross and DeVry. The Defendants are so intertwined so as to preclude their separation and Miller's "promise" was made on behalf of both DeVry and Ross. Thus, Plaintiff Scott's claim for promissory estoppel is valid and Defendants' Motion to Dismiss this claim should be denied.

### D.   Count IV, Violation of the Free Exercise of Religion

Defendants' continuing refusal to permit Plaintiff Scott to use legitimate alternatives to non-invasive procedures that do not involve inflicting unnecessary pain and suffering or death on animals in accordance with her sincerely held ethical, moral and religious beliefs deprives her of her First Amendment rights to freely exercise her religious beliefs guaranteed under the United States Constitution. In determining whether an individual has established that her First Amendment right to exercise her religion has been infringed, the Court's analysis is limited to two issues – whether the individual sincerely holds her beliefs, and whether these beliefs are, "according to the [individual's] own scheme of things, religious." United States v. Seeger, 380 U.S. 163, 185 (1965).

Plaintiff Scott sincerely believes in compassion for all animals. She has been a vegetarian for many years and does not buy leather, fur or products that have been tested on animals. She has remained active for many years in the companion animal rescue movement and has rescued dozens of animals on her own. She has spent countless hours rescuing animals in need, both in the United States and in St. Kitts. She realizes that all animals feel and suffer pain and will suffer or die unnecessarily as a result of the procedures performed in classes at Ross. In fact, viable alternative to these procedures exist that would provide Plaintiff Scott the opportunity to learn the necessary skills without harming any animals.[10]

Plaintiff Scott's beliefs influence her life in fundamental ways, including, but not limited to, what she eats, the clothes she wears, and the work she does. Her sincere non-violent beliefs provide profound guiding principles and should be afforded the First Amendment Protection.

United States Supreme Court precedent requires that sincerely held beliefs in non-violence should be recognized as religion, or alternatively, protected as a class in the same manner as religion. The conscientious objector cases provide an excellent analogue. For example, in Welsh v. United States, 398 U.S. 333 (1970), the Supreme Court held that

> if an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual a place parallel to that filled by…God in traditionally religious persons. Because his beliefs function as a religion in his life, such an individual is as much entitled to a "religious" conscientious objector…as someone who derives his conscientious objection to war from traditional religious convictions.

---

[10]   AVAR's website outlines the many alternatives available in veterinary education, *available at* http://www.avar.org/alternativeschart.xls (last visited July 7, 2008).

Id. at 340.  See also United States v. Seeger, 380 U.S. 163, 85 S. Ct. 850 (1965) ("Plaintiff has decried the tremendous spiritual price man must pay for his willingness to destroy human life. In light of his beliefs and the unquestioned sincerity with which he held them, we think the Board, had it applied the test we propose today, would have granted him the exemption").[11]

Just as conscientious objectors sincerely believe it is wrong to kill other humans, Plaintiff Scott feels, just as strongly, that it is wrong to unnecessarily kill and inflict suffering on non-human animals. Her beliefs are akin to the same moral teachings of otherwise traditional religions and therefore should be provided the same Constitutional protections.

Defendants contend that the government is not involved with Defendants at all. This statement is wholly incorrect. Ross students receive United States government subsidized loans to pay for their education. In fact, Plaintiff Scott herself receives government funding through student loans that are handled by Ross's financial aid department. This government funding is paid directly to Ross for tuition and other associated educational expenses as determined by Ross.  By analogy, private educational institutions receiving government funding through federal financial aid programs must be in compliance with Title IX regulations.  Likewise, an institution performing a service typically thought of as a governmental function (education), and receiving federal funds to do so (financial aid payments), must not be allowed to discriminate in a way the government itself would not be allowed to.

Thus, Plaintiff Scott's claim for free exercise of religion is valid and Defendants' Motion to Dismiss this claim should be denied.

**E.      Count V, Outrageous Conduct Causing Severe Emotional Distress**

The Defendants are liable for outrageous conduct causing severe emotional distress to

---

[11] Several non-theistic belief systems are commonly recognized as "religious" including Buddhism, Taoism, Ethical Culture, and Secular Humanism. Torcaso v. Watckis, 367 U.S. 488, 495, n.11, 81 S. Ct. at 1684 (1961).

Plaintiff Scott. The conduct of the Defendants was in fact "so outrageous in character, and so extreme in degree, as to go beyond possible bounds of decency, and be recognized as atrocious, and utterly intolerable in a civilized society." <u>Rugg v. McCarty</u>, 476 P.2d 753, 756 (Colo. 1970).

Ross posted and distributed an article in which Plaintiff Scott was interviewed by AVAR just outside of the Dean's office and in an email to the student body, faculty and staff of Ross. As a result of this despicable act, Plaintiff Scott "endured harassment, received threatening emails, and was ostracized, ridiculed and harassed by the Ross community." Plaintiff Scott "had difficulty finding lab partners and study groups and believes [her] grades suffered as a result." <u>See</u> Compl. ¶ 38-4; Plaintiff Affidavit ¶ 29-32. Defendants attempt to downplay this action as a simple re-publishing of the article is ridiculous. An article in an email coming from the Dean of any professional education institution is going to hold more influential weight than an article simply found through a solo journey on the Internet. An email from the Dean would certainly be read by all students and staff members who received it and viewed in a light most negative to Plaintiff Scott. Similarly, an article posted outside of the Dean's office is nothing more than an attempt to use a position of authority to influence the school community to cast negative judgment against Plaintiff Scott. This was an attempt to harass Plaintiff Scott and to damage her reputation within the Ross community simply because she had spoken the truth and had called the Defendants out on the lies and deceit she had endured as well as the inhumane and archaic practices Ross uses to teach their students. Moreover, this would also appear to be an attempt by the Defendants to so ostracize Plaintiff Scott so that she would be forced to quit and suffer the resulting financial losses. Defendant's retaliatory actions were a direct result of the continued suffering and emotional distress for Plaintiff Scott.

Defendants also contend with boldness that Plaintiff Scott is not being forced to do

something that is illegal. However, such a statement demonstrates a lack of knowledge of local St. Kitts' law.  Given the availability of alternative teaching methods, the surgeries performed at Ross are in violation of St. Kitts' Protection of Animals Act, which prohibits the "unnecessary suffering" of animals. See Cap 111 of the 1961 Revised Edition of the Laws of St. Christopher and Nevis. St. Kitts' legal code is based on British law, which prohibits students from conducting terminal and non-beneficial surgeries on healthy animals. In Great Britain, veterinary training is done with the health and well being of the animal in mind.  There are no unnecessarily invasive procedures, nor do students participate in terminal laboratory surgeries.  Throughout much of the educational community, these procedures are believed to negatively expose students to animal abuse.[12]  Animal abuse is not only illegal in St. Kitts, but is also illegal here in the United States. We live in an era where a case of animal cruelty can have as resounding an effect as was felt in the Michael Vick case.  In today's society, accusations of animal cruelty undermine credibility, destroy careers, result in public scorn and, result in jail time.

Plaintiff Scott would respectfully contend that being publicly ridiculed by the Dean of her school, ostracized and shunned by the student body and being asked to break the law and cruelly terminate the lives of healthy animals is sufficient to state a claim for outrageous conduct. Thus, Plaintiff Scott's claim for outrageous conduct causing severe emotional distress is valid and Defendants' Motion to Dismiss this claim should be denied.

**CONCLUSION**

FOR THESE REASONS, Plaintiff requests this Court to deny Defendants' motion to dismiss, and to grant such further relief as this Court deems just.

---

[12] Animal use resulting in harm or death is found to be detrimental to the veterinary education. See "The Effectiveness of Humane Teaching Methods in Veterinary education *available at* http://www.humanelearning.info/assets/resources/Papers/Comparative%20studies%20Knight%202007%20ALTEX. pdf (last visited July 14, 2008).

RESPECTFULLY submitted this 14th day of July, 2008.


July 14, 2008                                    Respectfully,



                                                 *Original signature of Jennifer Reba Thomaidis, #38349,on file
                                                 and available for inspection pursuant to C.R.C.P. 121.*

                                                 /s/ Jennifer Reba Thomaidis
                                                 **Attorney for Plaintiff**
                                                 Jennifer Reba Thomaidis
                                                 The Animal Law Center
                                                 4465 Kipling Street Suite 108
                                                 Wheat Ridge, CO 80033
                                                 Phone Number: 303-322-4355
                                                 E-mail: jrt@theanimallawcenter.com
                                                 FAX Number: 303-322-4354   Reg. #38349


Plaintiff's Address:
198 Moondance Lane
Black Hawk, Colorado 80403

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of July, 2008, a true and correct copy of the foregoing **RESPONSE TO DEFNEDANTS' MOTION TO DISMISS** was filed and served using Justice Link, emailed and/or deposited in the United States mail, postage prepaid, properly addressed to:

Clerk of the Court
Alfred A. Arraj United States Courthouse
Room A-105
901 19th Street
Denver, Colorado 80294-3589

David D. Powell, Jr.
Leah P. VanLandschoot
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
dpowell@bhfs.com
lvanlandschoot@bhfs.com

Lisa Zeiler Joiner
Fulbright & Jaworski LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
ljoiner@fulbright.com

By: *Original signature of Jennifer Reba Thomaidis, #39349, on file and available for inspection pursuant to C.R.C.P. 121.*

/s/ Jennifer Reba Thomaidis
Attorney for Plaintiff
Jennifer Reba Thomaidis
The Animal Law Center
4465 Kipling Street Suite 108
Wheat Ridge, CO 80033
Phone Number: 303-322-4355
E-mail: jrt@theanimallawcenter.com
FAX Number: 303-322-4354    Reg. #38349