IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:08-cv-00575-EWN-MEH

JAMIE SCOTT,

      Plaintiff,

v.

DEVRY INC. and ROSS UNIVERSITY SCHOOL OF MEDICINE,
SCHOOL OF VETERINARY MEDICINE LIMITED,

      Defendants.

---

## DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Defendants DeVry Inc. ("DeVry") and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited ("Ross"), through undersigned counsel, hereby reply to Plaintiff's Response to Defendants' Motion to Dismiss ("Pl's Response").  Plaintiff Jamie Scott ("Scott") attempts to salvage her First Amended Complaint through her Response, but Plaintiff's Response does not, and cannot, refute two crucial and fatal points:  (1) essential elements of Scott's claims have not been alleged by the First Amended Complaint; and (2) Scott's pleading contains admissions fatal to her case.  Scott's First Amended Complaint is insufficient as a matter of law, and her Response cannot change that.

DeVry and Ross respectfully request that this Court grant their Motion to Dismiss Plaintiff Jamie Scott's First Amended Complaint.

- 1 -

## Background

The Defendants incorporate the Background section of their Motion to Dismiss and will not recite the facts and history of this case again.   However, it is worth noting that the Background section of Plaintiff's Response to the Motion to Dismiss relies on sources other than the factual allegations in the First Amended Complaint.   It is improper for Scott to try to allege additional, new facts through affidavits and her Response brief at this stage of the proceedings. See Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established, however, that in determining whether to grant a motion to dismiss, the district court" is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint," and "extraneous arguments" cannot cure pleading defects).

## Argument

**I.     The First Amended Complaint Should be Dismissed For Lack of Personal Jurisdiction over Defendant DeVry Inc.**

Scott begins her argument that this Court may exercise personal jurisdiction over DeVry by trying to discount or distinguish the Supreme Court's language in Keeton v. Hustler Magazine, Inc.  Scott contends that Keeton has nothing to do with jurisdiction over a subsidiary being extended to include jurisdiction over the parent corporation.   This is simply false.   In a case which named subsidiary corporation Hustler Magazine, Inc., its parent company L.F.P., Inc., and the publisher as defendants, the Court expressly stated, "It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc. that jurisdiction may also be asserted over either of the other defendants."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  Likewise, it does not follow from the fact that personal jurisdiction exists

over subsidiary Ross that jurisdiction may be exercised over parent company DeVry.  The two entities must be evaluated separately.

As discussed fully in the Defendants' Motion to Dismiss, specific jurisdiction can be exercised over DeVry only if DeVry engaged in conduct in Colorado that led to Scott's claims. In an effort to establish that DeVry was somehow connected to the alleged conduct in Colorado giving rise to her claims, Scott now claims in her brief that: (1) Lisa Miller was an employee of DeVry, and (2) that DeVry is so closely connected to Ross that Ross' conduct must be attributed to DeVry.  Neither argument has any basis in fact.

According to Scott's own First Amended Complaint, Lisa Miller was a representative of Ross.  See Compl. ¶¶ 22, 47.  In fact, the Complaint seeks to establish a link between Lisa Miller's alleged conduct and DeVry not by alleging that Miller was employed by DeVry, but by stating that Miller "is an agent of DeVry Inc., as Ross is a subsidiary of DeVry Inc."  Id. ¶ 46. Now Scott claims in her response that Miller's conduct is attributable to DeVry not merely because Ross is a subsidiary but because Miller was directly employed by DeVry.  See Pl's Response at 5.  However, Scott has alleged that Miller was an admission representative of Ross, not DeVry.  See Compl. ¶ 22.  The reality is that Ross' admissions are not operated, controlled, or dictated by DeVry.  See Declaration of Gregory Davis (June 9, 2008) ¶ 8 (Exhibit A to Defendants' Motion to Dismiss) ("Davis Decl. I").  Plaintiff does not, and cannot, controvert these facts in her Response.  Lisa Miller was employed by Ross, not DeVry, and her job title was "Assistant Dean of Admissions for Ross University."  See Declaration of Gregory Davis (July

29, 2008) ¶ 3 (attached hereto as Exhibit A) ("Davis Decl. II")[1].  The fact that DeVry listed Lisa Miller in its Rule 26(a)(1) disclosures as a person likely to have discoverable information has no logical bearing upon whether she was employed by DeVry.  Scott listed a number of individuals in her initial disclosures, including Lisa Miller, but of course that does not prove that those individuals are her employees.  Scott's attempt to use initial disclosures to prove that Lisa Miller was DeVry's employee is misconceived.  The bottom line is that the First Amended Complaint does not allege that DeVry was involved in the alleged conduct in Colorado giving rise to Scott's claims.

Scott also argues that DeVry and Ross are so closely related that Ross' contacts with Colorado also establish personal jurisdiction over DeVry.  However, the connections Scott attempts to draw between DeVry and Ross, as alleged in the First Amended Complaint, do not suffice to attribute the actions of Ross to DeVry.  DeVry's website may include job postings for positions with Ross, but that does not mean that DeVry controls those employees.  In fact, Ross' employees, including its admissions department, act independently of DeVry.  See Davis Decl. I ¶¶ 7-8.  DeVry does not control, dictate, or operate the admissions program of Ross.  See id. ¶ 8.  Scott opines that Lisa Miller "could have very likely" found her job with Ross through DeVry's

---

[1] Counsel is aware that including an additional declaration with a reply is sometimes unusual.  In this instance, however, Mr. Davis' second declaration of jurisdictional facts is submitted due to the position, taken for the first time by the plaintiff in her Response, that jurisdiction may be exercised over DeVry because Lisa Miller was a DeVry employee.  Scott's new position is contrary to the allegations in the First Amended Complaint, and defendants did not have notice of it.  See Jacobsen v. Jacobsen, 126 F.2d 13, 14 (D.C. Cir. 1942) (affidavit regarding jurisdiction filed with a reply brief in support of a motion to dismiss); Safeco Ins. Co. v. Mirczak, 662 F. Supp. 1155, 1157 (D. Nev. 1987) (court relied upon affidavit regarding jurisdictional facts that was attached to a reply in support of a motion to dismiss); see also City of Erie v. Pap's A.M., 529 U.S. 277, 302 (2000) (Scalia, J., concurring) (relying on an affidavit submitted with a reply in support of a motion to dismiss).

website, see Pl's Response at 7, but such unsupported speculation is meaningless.   More importantly, even if it were assumed true for purposes of this motion, it would be irrelevant to whether personal jurisdiction could properly be asserted over DeVry, because Miller was not DeVry's employee.

In her quest to establish personal jurisdiction over DeVry for something she alleges Ross did, Scott wants this Court to use the ten factors enumerated by the Tenth Circuit in the corporate veil piercing context as if they are a checklist.  If any factors are present to any degree, she seems to argue, then Ross should be deemed an instrumentality of DeVry such that personal jurisdiction is established over DeVry.  However, the Tenth Circuit has explained that a parent company and a subsidiary are usually separate legal entities so that the actions of one do not expose the other to liability.  See Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1262 (10th Cir. 1989).  To determine whether a subsidiary is an instrumentality of the parent corporation, courts consider ten factors, including whether the parent and subsidiary have common officers or whether the subsidiary takes direction from the parent.  However, "[e]xercise of some degree of supervision by a 100% stockholder is not sufficient to render the subsidiary its instrumentality;" "supervisory concern" does "not raise a genuine factual issue" as to whether the subsidiary is the parent's instrumentality, because "participation in a subsidiary's affairs does not amount to the domination of day to day business decisions and disregard of the corporate entity." Id. at 1264 (quotations and citations omitted).  Thus, the mere existence of some of the ten factors is not enough even to raise a question of fact; there must be domination by the parent.

- 5 -

Scott has argued for the existence of only four out of ten factors -- namely that (1) DeVry owns the stock of Ross; (2) the two have one common officer, Thomas Shepherd; (3) DeVry's website refers once to Ross as a "division;" and (4) DeVry maintains general oversight of Ross and provides some direction to Ross.  See Pl's Response at 5.  This leaves the majority of the ten factors weighing against the treatment of Ross as an instrumentality whose alleged conduct can be attributed to DeVry.  Moreover, the factors that are present do not weigh heavily in favor of treating Ross as an instrumentality.  There is a lone common officer among all of the officers in the two companies, and Scott does not contend that Thomas Shepherd's duties in the two corporations overlap or that DeVry uses the one common officer to dominate Ross.[2]  Broad statements that a parent company maintains some oversight over a subsidiary indicate exactly the sort of general supervisory control that the Tenth Circuit addressed in Lowell and found insufficient to so much as raise a question of fact.  The Academic Committee Charter which Scott attaches to her Response as Appendix D says nothing about DeVry exercising any degree of control over Ross' admissions (the function of Ross about which Scott complains), and it reveals only that DeVry maintains the sort of general supervisory concern and participation that is fully allowed between two separate legal entities.  Gregory Davis' uncontroverted declaration establishes that Ross is managed by its own independent administration and board.  See Davis Decl. I ¶ 7.  Although DeVry's website includes Ross' mission statement, the mission statement

---

[2] What Scott does not advise the Court is that the same information she relies on to show that there is a single common officer also indicates that DeVry has a total of twelve officers and thirteen directors.  See http://www.devryinc.com/corporate_information/officers_directors.jsp (last visited July 29, 2008).  Ross has a total of nine university administrators, see http://www.rossu.edu/about/admin.cfm (last visited July 29, 2008) in addition to an independent board of directors that meets regularly.  See Davis Decl. I at ¶ 7.  Thus, there is but one common officer among more than thirty-four positions.

- 6 -

is clearly labeled as the "Institutional Mission Statement" for Ross alone. <u>See</u> Pl's Response Appendix C.

In short, Scott's attempt to pierce the corporate veil in order to impute Ross' contacts with the jurisdiction to its parent, DeVry, fails. She has not alleged facts sufficient to establish personal jurisdiction over DeVry, and the facts do not support such an outcome. DeVry does not have Colorado contacts that underlie Scott's claims. There is no specific jurisdiction over DeVry, and it should be dismissed with prejudice from this case.

As for general jurisdiction, Scott does exactly what the Defendants discussed in their Motion to Dismiss – she tries to stretch the barest of contacts with Colorado to the level of "systematic and continuous." As already discussed, there is no reason to attribute Ross' alleged contacts with Colorado to DeVry. The only possible contacts Scott can point to as a basis for exercising general jurisdiction over DeVry are that DeVry's website advertises for jobs in Colorado and that DeVry holds recruiting activities in Colorado. <u>See</u> Pl's Response at 8.

DeVry, like many large corporations, has employees from many different states. However, this does not mean that DeVry can be subject to general personal jurisdiction in any or all of the states from which it has hired employees or in which its website may be used to search for jobs. If this were the case, any large business would be subject to personal jurisdiction in most, if not all, states. Such a result is clearly not in line with the due process requirements for personal jurisdiction and certainly cannot be said to comport with the "traditional notions of fair play and substantial justice." <u>See</u> <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1533 (10th Cir. 1996) (internal quotation and citation omitted). DeVry has no offices in

Colorado, is not authorized to do business in Colorado, and does not have a registered agent in Colorado.  See Davis Decl. I ¶ 3.

Scott alleges, without support and for the first time in her Response, that DeVry holds recruiting events in Colorado.  The First Amended Complaint, however, alleges only a recruiting event specifically conducted by Ross.  See Compl. ¶¶ 20-21.  While DeVry's subsidiaries, including DeVry University Inc., have locations in Colorado, and Ross is alleged to have conducted an admissions seminar in Colorado, DeVry does not operate or control the admissions of Ross or operate any schools in Colorado itself.  See Davis Decl. I ¶¶ 6, 8.  Contrary to Scott's new, extraneous allegation, DeVry is not authorized to do business in Colorado.  See id. ¶ 3 (DeVry also has no registered agent and no offices in Colorado).

Finally, Scott completely ignores that suit in Colorado would be unduly burdensome for DeVry.  As discussed in Defendants' Motion to Dismiss, Scott's conclusory statement in the First Amended Complaint that suit in Colorado is not unduly burdensome for DeVry is wholly insufficient to support personal jurisdiction.  There is no basis to assert general jurisdiction over DeVry, and it should be dismissed as a party to this case.

## II. The First Amended Complaint Should be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court should look only at the allegations contained within the four corners of the Complaint.  See Jojola, 55 F.3d at 494 ("It is well-established, however, that in determining whether to grant a motion to dismiss, the district court" as well as an appellate court reviewing the decision "are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint," and

statements or arguments outside the complaint cannot save it from dismissal).   Thus, Scott's attempt to effectively amend her pleading by adding new allegations not contained in her First Amended Complaint through affidavits and Response briefing is improper at this stage of the proceedings, and Defendants object.   The First Amended Complaint does not adequately state claims upon which relief can be granted, see Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007), and Scott cannot cure that deficiency by going outside the pleading and making new allegations.[3]

A.      Count I, Misrepresentation, Should be Dismissed.

The Response still does not identify whether Count I is actually a claim for fraudulent misrepresentation or negligent misrepresentation.   Instead, the Response simply lists the elements for both claims and argues that neither should be dismissed.   See Pl's Response at 10. But the First Amended Complaint does not raise two separate counts of misrepresentation.   See Compl. ¶¶ 42-50.   Defendants, thus, still have no notice of which type of claim the misrepresentation is (contrary to Rule 8), and moreover, regardless of which one it is, the allegations do not satisfy Rule 9(b) for fraud.   As Scott herself is not sure what type or how many counts of misrepresentation she has alleged, there is clearly a problem with her First Amended Complaint.

---

[3] While it is improper for Scott to attempt to introduce factual allegations outside the face of her pleading via affidavits or other means, the Declaration of Gregory Davis submitted by the Defendants as attachment to the Motion to Dismiss and the Declaration attached to this Reply are properly considered because they address only jurisdictional facts.   See Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V., 710 F.2d 1449, 1454 (10th Cir. 1983) ("[o]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint" can be "contradicted by affidavits" submitted by the defendant).

In any event, merely listing the elements of a claim is not sufficient to state a claim, particularly under the standard established by <u>Twombly</u>. The elements of negligent misrepresentation, which were not recited in the First Amended Complaint, are suddenly alleged in Scott's Response to the Motion to Dismiss, without elaboration or support. No matter what the plaintiff wants now, there can be no claim for negligent misrepresentation. As Scott has failed to even allege this type of claim, she cannot meet her burden under Rule 12(b)(6).

As for fraudulent misrepresentation, Scott does not refute the arguments in Defendants' Motion to Dismiss. She correctly recites the elements of fraudulent misrepresentation but does not even attempt to address the key points raised by Defendants – that the requisite element of reasonable reliance is missing, and that Scott's actions, as alleged in her own Complaint, ratified any fraud that allegedly took place initially.

Scott admits that she learned that she would be required to perform terminal surgeries "immediately upon her arrival at Ross." Compl. ¶ 29. She then "immediately" spoke to the head of surgery at Ross and was told that she would flunk out if she did not participate in the surgical coursework. <u>Id</u>. ¶¶ 32-33. As discussed fully in the Motion to Dismiss, at that point Scott no longer had any reasonable basis for relying upon any purportedly false information provided to her at an earlier seminar, and the necessary element of reasonable reliance is lacking. <u>See</u> Motion to Dismiss at 11-14. In addition, Scott ratified or waived the supposed fraud by her conduct. Scott has remained at Ross with full knowledge attained "immediately upon her arrival" that whatever she alleges she was told at the informational seminar was false. Her Response brief does nothing to refute this fatal admission.

Plaintiff makes a curious factual argument by including a declaration from an unrelated third party at AVAR (an animal rights organization) about her own conversation with Lisa Miller.  See Pl's Response at 11 and Exhibit G thereto.  The declaration purports to recount a conversation the declarant claims she had with Lisa Miller in Hawaii.  Defendants dispute the accuracy of the declaration, but more importantly, the declaration is entirely irrelevant to the present motion.[4]  What Lisa Miller allegedly said to other people at other times is completely irrelevant, at this or any other stage of these proceedings.  The First Amended Complaint alleges only that Lisa Miller made a misrepresentation at a seminar in Fort Collins.  See Compl. ¶¶ 21-24.  All allegations regarding other allegedly false statements are outside the scope of the Complaint and, therefore, should not be considered.  Even if the affidavit of Teri Barnato could be considered, it has no relation to Jamie Scott's claims at all.  Neither the First Amended Complaint nor the extraneous affidavits of Scott and Barnato make any claim that Jamie Scott heard or knew about the supposed misrepresentations made to Barnato at a convention in Hawaii.  They have no bearing whatsoever on Scott's claim that she attended Ross in reliance upon a misrepresentation made at the Fort Collins seminar.

For all of the reasons outlined in the Defendants' Motion to Dismiss, Count I of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

---

[4]  Counsel further notes that the Response alleges no less than three times that Ms. Miller and/or Ross "lied" to her. The language exceeds the realm of reasonable advocacy and is simply inappropriate, insulting rhetoric.  Defendants object to it, and ask that Plaintiff refrain from such future *ad hominem* attacks which do nothing to further the progression of this case.

B.    <u>Count II, Breach of Contract, Should be Dismissed.</u>

Scott correctly recites the elements of a contract "as learned by any first-year law student." She also recites the elements of a breach of contract claim. What she does not do, however, is address how Count II of the First Amended Complaint can state a claim when it not only fails to allege the requisite meeting of the minds but actually affirmatively demonstrates by her own admission that no such meeting of the minds existed. The Tenth Circuit has held that a meeting of the minds is necessary to form a contract, and this meeting of the minds is to be "determined by the objective manifestation of the parties." <u>See</u> <u>Zaccardi v. Zale Corp.</u>, 856 F.2d 1473, 1478 (10th Cir. 1988). Even an implied contract can exist only where it is "reasonable under an objective standard, not merely the subjective belief" of one party. <u>See</u> <u>Richmond v. Oneok, Inc.</u>, 120 F.3d 205, 210 (10th Cir. 1997) (internal quotation and citation omitted). This is not a word game or a circuitous argument, it is black letter law. What Scott has actually alleged is a misrepresentation, not a contract with a specific term for no terminal surgeries agreed upon by both Ross and Scott.

Scott now argues that she attempted to mitigate and minimize her damages. This is not alleged in the First Amended Complaint. This argument relies entirely upon factual allegations coming from outside of the pleading, and Scott's extraneous allegations regarding mitigation do not cure the legal insufficiency of her breach of contract claim. Although not relevant now, it is also unclear how Scott can possibly claim to have mitigated her damages when her own Complaint affirmatively states that she learned about terminal surgeries "immediately" upon arrival at Ross yet chose to remain, pay tuition, fees, and expenses for additional semesters, and voluntarily submit herself to a curriculum and academic requirements with which she disagreed.

Thus, Count II of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### C.     Count III, Promissory Estoppel, Should be Dismissed.

In her Response, Scott tries to circumvent her pleading deficiencies by arguing that she has "established thoroughly and completely earlier in this response" what was meant by her First Amended Complaint.  See Pl's Response at 14.  This is not proper, as arguments or statements made in a brief cannot cure flaws in a pleading.  See Jojola, 55 F.3d at 494.

Although alternative pleading may be permitted in some instances, the First Amended Complaint does not set forth alternative theories of recovery.  Scott alleged that she had a contract with Ross, see Compl. ¶ 52, and the existence of a contract negates a claim for promissory estoppel.  See Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C., 176 P.3d 737, 741 (Colo. 2007).[5]  This also establishes that any reliance by Scott was unreasonable, as she could not reasonably rely upon extraneous promises in the face of a contract with Ross that included Ross' curriculum (a curriculum which she readily admits requires terminal surgeries for all students.)

In an attempt to explain away Scott's lack of reasonable reliance (a lack established by her own allegations), Scott claims that she was "trapped" in St. Kitts and had no choice but to continue to pay for tuition, fees, and other expenses while attending Ross, despite having no ground for continuing to rely upon the alleged false statement of Lisa Miller.  See Pl's Response

---

[5] The District of Kansas case Scott cites explains that "alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract."  James M. Caplinger, Chartered v. Lundgren, 905 F. Supp. 876, 882 (D. Kan. 1995).  Only now does Scott claim that she doubts the existence of a contract, even though her First Amended Complaint shows otherwise.

at 13.  She also argues that a lack of reasonable reliance is a factual issue that cannot be resolved on a motion to dismiss.  The factual allegations about being "trapped" are new and were not included in the First Amended Complaint.  Once again, Scott wants to use extraneous allegations to try to save her flawed pleading.  This she cannot do.

Moreover, it is illogical for Scott to claim that she was "trapped" from the moment she arrived at Ross and learned about terminal surgeries, because she readily admits that after that first day, she continued to get student loans, pay tuition and other costs, and remain at Ross. Nobody made her do this, and certainly not either of the Defendants.  It was the plaintiff's choice to proceed in the manner that she did.  If she had the resources to do the things that she alleges she did, then she clearly was not "trapped."  She admits she was told that if she did not do terminal surgeries, she would fail.  See Compl. ¶ 33.  What the plaintiff attempts to provide in her Response is the reason for why she acted the way she did.  Her thought process upon receiving the information regarding terminal surgeries, however, is irrelevant.  It does not, and cannot, change the fact that she chose to stay enrolled and begin her studies at Ross even though she "immediately" learned upon her arrival at Ross that terminal surgeries were required.  As a matter of law, this admitted knowledge eviscerates any reasonable reliance she now claims to have had upon Ms. Miller's alleged statement months earlier in Colorado.  After hearing this information "immediately" upon her arrival, it was unreasonable *per se* that Scott proceeded with her student loans, paid tuition and costs, and remained at Ross for several semesters all because of an alleged contrary statement made months earlier that had now been corrected for her.

For all of the reasons outlined in the Defendants' Motion to Dismiss, Count III of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

D.     Count IV, Violation of the Free Exercise of Religion, Should be Dismissed.

Most of Scott's Response to Defendants' Motion to Dismiss Count IV is dedicated to analyzing whether Scott's beliefs are sincerely held and religious.  This is utterly irrelevant, because there can be no Free Exercise claim absent government action.  Even if Scott's argument were relevant, however, it would not save Count IV of the First Amended Complaint.  Her complaint does not allege any beliefs that rise to the level of a religion.  There is a vast difference between terminal surgeries required as part of a generally applicable program of veterinary training and conscientious objections to war.

Further, the Tenth Circuit has specifically held that even where a student's beliefs are religious, a state school may have a curriculum requirement that burdens those beliefs as long as the requirement is generally applicable, is not discriminatorily motivated or applied, and there is no system allowing for individual exemptions to the requirement.  See Axson-Flynn v. Johnson, 356 F.3d 1277, 1294-95 (10th Cir. 2004); see also Kissinger v. Bd. of Trustees of Ohio State Univ., 5 F.3d 177, 179-80 (6th Cir. 1993) (a terminal surgery requirement by a state veterinary school did not violate a student's right to exercise freely her religion because the requirement was generally applicable, did not target any particular religious belief, and there was no system allowing for exceptions to the requirement).  There has been no allegation that Ross' terminal surgery requirement is not generally applicable.  It is a curriculum requirement applied to every

student, and there is no allegation or indication that it is a pretext for religious discrimination.
There is no system of individualized exceptions to the curriculum requirement.  It is exactly the
sort of curriculum requirement that even a state school could impose without raising a Free
Exercise concern.  See Axson-Flynn, 356 F.3d 1277 at 1294.

Scott spends only one paragraph addressing the key point raised by the Motion to
Dismiss -- that there is no government action at issue and, therefore, there has been no violation
of the guaranty that "Congress shall make no law" respecting the free exercise of religion.  See
U.S. Const. Amend. I.  In the entire paragraph, Scott fails to cite even a single authority for her
notion that a private company becomes a government actor for First Amendment purposes just
because individual students receive federal student loans.  See Pl's Response at 16.

Although a private school may be subject to a federal statute, such as prohibitions against
racial discrimination, for accepting federal funds, the school becomes subject to the federal law
only if Congress has conditioned the funds upon the school's compliance with the federal
statutory scheme.  See Bob Jones Univ. v. Johnson, 396 F. Supp. 597, 606-07 (D.S.C. 1974).
For example, the statutory framework providing for federal tuition funds for veterans requires
that the veterans attend approved schools.  Id. at 600-01.  Title VI of the Civil Rights Act of 1964
prohibits racial discrimination by anyone participating in a program that receives or uses federal
funds, and the Title VI regulations expressly provide that this includes any school approved for
receipt of tuition money via federal funds for veterans' education.  Id. at 601.  Thus, a private
institution is subject to such federal requirements only because the particular program of funding

- 16 -

is conditioned upon compliance with a particular federal statute and that statute is applicable to private entities accepting federal funds.

This does not mean that every private school becomes a government actor subject to the constitutional limits on government action just because students receive federal loans.  If that were so, virtually every school would be a state actor.  However, even religious schools may receive some state aid through generally applicable programs, and these schools are not then treated as government actors.  See Norwood v. Harrison, 413 U.S. 455, 469 (1973) (explaining that "cautiously delineated secular government assistance to religious schools" is permissible). If they were, they would be forced to give up their religious teachings to comply with the First Amendment, but this is simply not so.

Nothing in the Free Exercise Clause indicates that it applies to a private institution that participates in a generally applicable student loan program, nor is there any allegation in the First Amended Complaint that Ross accepted federal monies that were conditioned upon the application of the Free Exercise Clause to its curriculum.  There is no state action whatsoever alleged in the First Amended Complaint, and it is therefore insufficient as a matter of law.  Count IV of the First Amended Complaint should be dismissed with prejudice.

     E.     <u>Count V, Outrageous Conduct Causing Severe Emotional Distress, Should be Dismissed.</u>

Scott's arguments in response to the Motion to Dismiss reveal that the Defendants are right on point in arguing that Count V of the First Amended Complaint fails to satisfy the pleading requirement of Federal Rule 8.  Scott's Response points to more than one source of alleged "outrageous conduct" by Ross, including something not alleged in the Complaint at all,

that Ross is forcing Scott to engage in illegal conduct under St. Kitts law. (The latter is completely frivolous and lacks good faith.) Thus, the First Amended Complaint's broad, catch-all allegation that there was "other outrageous conduct" does not establish the elements necessary for a claim of outrageous conduct, nor does it identify what "other" conduct is supposedly extreme and outrageous. Such pleading cannot satisfy the requirements of Rule 8(a)(2). See Houston v. Mile High Adventist Acad., 872 F. Supp. 829, 835 (D. Colo. 1994) (dismissing a claim for outrageous conduct that failed to "detail specific acts" entitling the plaintiff to relief). Additionally, Scott's Response does not even address the failure of her First Amended Complaint to demonstrate how the supposedly outrageous conduct was intended to cause her any emotional distress or to establish that she suffered any distress at all, much less that the distress rose to the required level of severity.

It appears that the conduct Scott actually wants to complain about, the harassment, threats, and ostracizing she says she endured, came not from Ross itself but from Scott's fellow students. Nowhere in the First Amended Complaint does Scott allege that Ross faculty or administrators harassed or threatened her. Nowhere does she allege that the Dean said anything negative about her or her article when he distributed it. She does not allege that Ross encouraged her classmates to harass her or even that she brought the supposed harassment to the attention of Ross officials. Based on Scott's own allegations, the only thing Ross did was distribute without comment an accurate copy of a publicly available article. Even if this could be viewed as unfair or unkind, this does not rise to the "extremely high" standard required by Colorado law. See Coors Brewing Co. v. Floyd, 978 P.2d 663, 665 (Colo. 1999); see also Pearson v. Kancilia, 70

- 18 -

P.3d 594, 597 (Colo. Ct. App. 2003) ("[m]ere insults, indignities, threats, annoyances" are not outrageous conduct).

Scott also attempts to premise her outrageous conduct claim on the theory that Ross' inclusion of terminal surgeries in its curriculum is illegal.  This allegation is not contained in the First Amended Complaint.  It instead arises for the first time in the Response and is so lacking in fact that it does not meet minimal pleading standards.  Scott offers nothing to support the claim that the subjects of terminal surgeries at Ross suffer any pain at all, much less suffer "unnecessarily."   Scott likewise cites nothing to support the claim that the law of St. Kitts prohibits terminal surgeries as part of veterinary training.  As Scott must know, since she resides in St. Kitts, the government of St. Kitts determined on April 22, 2008, -- in response to similarly unfounded assertions under the same statute by People for the Ethical Treatment of Animals ("PETA") -- that Ross "is not in violation of any current laws of the Federation of St Kitts & Nevis governing the treatment of animals."   See "St Kitts government says veterinary school operates within local laws" (Apr. 23, 2008), available at http://www.caribbeannetnews.com/news-7333--35-35--.html (quoting the Apr. 22, 2008 statement issued by the St Kitts and Nevis Ministry of Tourism, Sports & Culture) (last visited July 31, 2008).   Scott alludes to British law on the question of terminal surgeries, but Ross is not located in Britain.  St. Kitts is an independent nation with its own laws, and Scott provides no

- 19 -

support for the assertion that British law has any application in St. Kitts.[6]  Even were it relevant, there is absolutely nothing to show that Ross' curriculum requires Scott to violate St. Kitts law.

Therefore, for the reasons discussed in the Defendants' Motion to Dismiss, Count V of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### Conclusion

For the foregoing reasons along with those raised in the opening brief, Defendants DeVry and Ross respectfully request that the First Amended Complaint be dismissed in its entirety.  There is no personal jurisdiction over DeVry, and the plaintiff's First Amended Complaint does not state a claim upon which relief could be granted.  Defendants ask that this action be dismissed in its entirety with prejudice, that they be awarded all costs and fees incurred, and that the Court order any other such relief that the Court deems just.

Respectfully submitted this 1st day of August, 2008.


*s/ David D. Powell, Jr.*
David D. Powell, Jr.
Leah P. VanLandschoot
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
dpowell@bhfs.com
lvanlandschoot@bhfs.com
303-223-1100

---

[6] Obviously, it also is completely irrelevant that Michael Vick violated laws within the U.S. through his involvement in dog fighting.  Dog fighting, like animal welfare or treatment in general, has nothing whatsoever to do with tort and contract claims against a school in St. Kitts and its parent corporation over an allegedly false representation regarding one aspect of its curriculum.

- 20 -

John M. Simpson
Lisa Zeiler Joiner
Ashley Seuell
Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
jsimpson@fulbright.com
aseuell@fulbright.com
202-662-0200

*ATTORNEYS FOR DEFENDANTS*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of August, 2008, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

jrt@theanimallawcenter.com
*ATTORNEY FOR PLAINTIFF*


BROWNSTEIN HYATT FARBER SCHRECK, LLP

*s/ David D. Powell, Jr.*
David D. Powell, Jr.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
dpowell@bhfs.com
303-223-1100